## A. F. LUCAS v. W. C. PATTON.

Decided February 3, 1908.

**1.—Contract for Specific Performance—Venue.**

A suit for the specific performance of a contract for the sale of land is not a suit for the recovery of land or damages thereto, and hence must be brought in the county of defendant's residence.

**2.—Non-resident—Appearance—Jurisdiction.**

In a suit for the specific performance of a contract for the sale of land, by a resident of this State against a non-resident, the appearance of the defendant, though only for the purpose of pleading in limine to the jurisdiction

of the court, gives the court jurisdiction over his person for the purpose of rendering judgment against him.

### 3.—Contract—Sale of Land—Specific Performance—Evidence.

The language "I may be willing to take $1,000 * * * and if you are willing to pay this price let me know and I will write you acceptance of the deal," contained in a letter written by the owner of land to a prospective purchaser, was not such a proposition as, if accepted, could be enforced in a suit for specific performance, when viewed in the light of all the correspondence, in evidence.

Appeal from the 60th District Court, Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Greers & Nall,* for appellant.—Lucas being a resident of and served in the city of Washington, D. C., and not within the State of Texas, and this being a suit in personam, and not in rem, the court had no jurisdiction over the person of defendant and erred in so holding. Being without jurisdiction over the person of defendant, it was further error to refuse to dismiss the suit. Miller v. Rusk, 17 Texas, 170; Cavin v. Hill, 83 Texas, 73; Hearst v. Kuykendall, 16 Texas, 327; Pennoyer v. Neff, 95 U. S., 714; S. C. Book 24, L. ed., p. 565; Lutcher v. Allen, 43 Texas Civ. App., 102; Jones Lumber Co. v. Rhoades, 17 Texas Civ. App., 665.

The court erred in holding the letters interchanged between the parties made a binding contract to convey the land, in that: (1) The same was without consideration and constituted a nudum pactum agreement; (2) Such letters do not constitute an unqualified and unconditional contract to convey on the part of defendant, nor an unconditional and unqualified agreement to accept a conveyance on the part of the defendant; and (3) In that plaintiff makes no tender or offer of tender of the money to defendant. Sullivan v. Zanderson, 42 S. W. Rep., 1027; Foster v. N. Y. Land Co.; 22 S. W. Rep., 260; Beers . v. Mackin (U. S. Sup. Ct.), Bk. 36 L. Co. ed., 843; 1 Warville on Vendors, sec. 125.

Upon our proposition that the language of defendant's letter of December 13, 1905, showed no present intention to convey and therefore reserved title in himself, we beg to cite the following as the nearest in point of any Texas cases we can find, to wit: Foster v. N. Y. Land Co., etc., 22 S. W. Rep., 260; Patton v. Rucker, 29 Texas, 411; Sullivan v. Zanderson, 42 S. W. Rep., 1027.

No brief for appellee.

McMEANS, ASSOCIATE JUSTICE.—Appellee, W. C. Patton, plaintiff below, sued the appellant, A. F. Lucas, defendant below, in the District Court of Jefferson County, for specific performance of a contract to convey certain land situated in Galveston County.

This is an "agreed" case under the statutes, the agreement being as follows:

"First. That A. F. Lucas owned a good and sufficient title in and to 111¼ acres of land in Galveston County, Texas, and more particularly described as follows:

"All that certain tract or parcel of land lying and being situated in Galveston County, Texas, on Bolivar Peninsula, being a part of the Martin Dunman and part of the 200 acre tract deeded to Louis Cronea out of the Sarah Reires No. (1) One and No. (2) Two Division of land, containing eleven acres of land or eleven and one-quarter acres of land out of what is known as the James Cronea and Elizabeth Cronea tract of land and being the same land conveyed to Albert Bellar and wife by James and Elizabeth Cronea on January 14, 1891, by deed duly recorded in vol. 87, pp. 440 and 441 thereof of the deed records of Galveston County, and thereafter conveyed by said A. Bellar and wife to George E. Smith.

"And said Lucas still owns the land unless the letters hereinafter copied, together with the tender and deposit in court by plaintiff of One Thousand Dollars constitute a contract sufficient for plaintiff to maintain this suit for and have a decree of specific performance, subject to the question as to whether the court has the jurisdiction and power over the persons and subject matter to decree specific performance, formal pleas and demurrers to the jurisdiction being agreed to be considered without the necessity of reducing them to writing.

"Second.    On the question of jurisdiction it is admitted: Plaintiff is a resident of Jefferson County, Texas; that defendant is a resident of Washington, District of Columbia, U. S. A.; that the land is situated in Galveston County; and that the defendant has been served to appear herein, by personal service in the city of Washington, D. C., under 1 Sayles' Texas Civil Statutes, arts. 1230 to 1234, both inclusive.

"Third.    The following are the letters interchanged between the plaintiff and defendant, and, if a contract, they constitute all the contract there is between the parties, to wit:

"Beaumont, December 5, 1905.

"Mr. A. F. Lucas,
    "Washington, D. C.
    "Dear Sir—I am still tugging away at High Island, and every time I get a little money I buy some land there. Everyone has began to call me a crank about it, and you know I was before you left. Carroll is still hammering at his well. You have a piece of land I would like to have and will give you $65 per acre for it—if you want to sell—if you accept my offer send deed to some bank here and notify me and I will take it out—if not, there is no harm done. Wishing you success through life, I am,
                    "Yours respectfully,
                        "Wm. C. Patton."

"Washington, D. C., 13th December, 1905.

"Mr. Wm. C. Patton,
    "534 Harriet St.,
        "Beaumont, Texas.
    "Dear Sir—I received your favor of the 5th inst., and note that you would like to acquire my 11¼ acres in High Island, and that

you was willing to pay at the rate of $65 per acre. I paid that price myself, and have held it for five years and over, because I believe firmly that it some time will make that many times the value you place on it. I do not know what developments are being made there, but if I had the time I am confident that I would make a big showing in that locality.

"In reply beg to say that I may be willing to take $1,000 for the tract of land in question, and if you are willing to pay this price please let me know and I will write you my acceptance of the deal.

"Awaiting your reply, I am yours very truly,

"A. F. Lucas."

"Beaumont, Texas, December 19, 1905.

"Capt. A. F. Lucas,

"1406-16th, Washington, D. C.

"Dear Sir—Yours of the 13th inst. to hand and noted. In reply will say I was sorry not to get the land at the price I offered. Guidry had 13-71 acres at the price you want and I didn't care to give it and it is now bought by a man by the name of W. D. Gordon—he gave $12.00 for the 13-74 acres he bought at my place and Rollover and wanted a piece here—so now I suppose I will be forced to pay that price for yours, but it is more than I would pay, but I want the land and will accept your offer of $1,000.00 for the 11¼ acres of land; you can draw on me for that amount and send to First National Bank of Beaumont, with deed and I will take it up. There is no development at High Island. Carroll has been since the first of June trying to cut a water flow off in his well and has failed so far, hoping to hear from you, I am

"Yours respectfully,

"Wm. C. Patton."

"Capt. A. F. Lucas,

"Washington, D. C.

"Dear Sir—On the 18th of December I replyed to your letter dated the 13th of same month, refusing my offer of $65 per acre for 11¼ acres of land at High Island, Tex., but saying in the same letter if I felt like giving you $1,000 for the 11¼ acres you would write acceptance of the deal. I wrote you on above date that I would accept your offer, giving you $1000 for the 11¼ acres, and wrote you to draw draft on me for the amount and mail to First National Bank of Beaumont with attached deed, and I would take it out.

"Supposing my letter failed to reach you, I write this accepting your proposition.

"With best wishes, I remain,          "Yours respectfully,

"Wm. C. Patton."

"Washington, D. C., 13th January, 1906.

"Mr. Wm. C. Patton,

"534 Harriet St.,

"Beaumont, Texas.

"Dear Sir—Replying to your letter of the 6th inst., beg to say

that in my letter of the 13th ultimo, I said "that I may be willing to take $1,000 for the land," but after mature consideration, and in view of· a possible oil strike in the future, would say, that I am not willing to accept the money.

"You are on the ground and in far better position than I am here, to judge of the land value there, hence you will recognize the fitness of my remark.

"Wishing you success, I am,     Yours very truly,
                                       "A. F. Lucas."


                              "524 Harriet St., Beaumont, January 19, 1906.
"Capt. A. F. Lucas,
  "Washington, D. C.
  "Dear Sir—Yours of the 13th inst., to hand and noted, in reply will say that I was very much surprised to hear that you had went back on your own proposition.  I refer ·you to your letter of the 13th of December, 1905, in reply to my letter of the 5th, saying if I was willing to give you $1000 for the land in question you would write · acceptance of the deal, and was waiting my reply.  I replied to you on the 18th of December, accepting your offer and wrote you to draw on me for that amount and send to First National Bank, Beaumont, with attached deed, and I would take it out.  Supposing the deal between us closed I made my arrangements accordingly and will lose if not closed, as I understand it to be, so I expect you to comply with your own proposition.  Expecting to hear from you soon, and also· looking for deed, I remain,
                                   "Yours respectfully,
                                       "Wm. C. Patton."


"Plaintiff has deposited in the registry of this court as tender to plaintiff, the sum of One Thousand Dollars, which is to remain deposited until the final determination of this cause, both in this court and in all courts to which the suit may ˙ be taken, whether by appeal, writ of error, or otherwise.

"*Questions of Law.*—From the foregoing facts the court shall file conclusions of law upon the questions of law arising on such facts, as follows, to wit:

"First.   The ˙ court shall determine whether it had jurisdiction over the person of the defendant upon which it has power ·to decree specific performance, and in considering this question the court shall consider and treat the record as though defendant had formally filed written pleas to the jurisdiction, negativing all the subdivisions of 1 Sayles' Texas Civil Statutes, art. 1194; if the court decides it has jurisdiction it shall file further conclusions as hereinafter set forth; but if it decides it has no jurisdiction, it shall decree that suit be dismissed at plaintiff's cost.

"Second.   The court shall decide whether this suit was rightfully brought in Jefferson County, Texas, as though defendant had fully .pleaded it was brought· in the wrong county, under Sayles' Civil Statutes, art. 1265.   If the court decides it is properly brought in

Jefferson County, it shall file other conclusions hereinafter provided for; if it decides it is not properly brought in Jefferson County, the suits shall be dismissed at plaintiff's cost.

"Third.   Should the court decide under the two foregoing clauses it has jurisdiction over the subject matter and parties to this suit, it shall then conclude, as a matter of law, whether the letters copied in clause 'Third' of the agreed facts, together with plaintiff's tender and deposit of the $1000 constitute a contract for the conveyance of the land.  If yea, the court shall enter its decree of specific performance in plaintiff's behalf, and after deducting all court costs therefrom, order the balance of the One Thousand Dollars on deposit, to be paid to defendant, or his attorneys of record. · If the court holds said letters and tender do not constitute a contract, it shall decree that plaintiff take nothing by his suit, and the defendant go hence without day, and recover of plaintiff all costs, and that after payment of the court costs the balance remaining of the $1000 deposited by plaintiff shall be returned to him, or his attorney of record.

"Fifth.   Either party against whom the court may so decide, may except to the conclusions of law and decree of the court, and appeal or sue out writ of error therefrom, and the decree shall note such exceptions and notice of appeal and all said questions herein agreed upon shall be determined by any and all Appellate Courts to which such appeal or writ of error is taken.

"Sixth.   This agreement shall constitute the statement of the facts, and the questions of law to be determined, on any and all trials of this case, whether by appeal or otherwise, when approved by the trial court."

This agreement was signed by the attorneys for the parties and was approved and ordered filed by the District Judge.   The trial judge adopted the agreement as his findings of fact, and concluded therefrom, as matters of law, in effect, that by reason of the undisputed facts in reference to the residence of the parties, the service had upon defendant, and the nature of the relief sought, the court had jurisdiction to entertain the cause; that as the nature and purpose of the suit was, primarily, to adjudicate between the parties the title to the land in question, to the extent of divesting the same out of the one· and vesting it in the other, ·the proceeding was not wholly *in personam,* but one *quasi in rem,* and that as to a defendant residing without the State the suit could be maintained in the county in Texas of plaintiff's residence; that the correspondence between the parties set out in the agreement constituted a contract between them mutually binding upon them for the sale and purchase of the land.   Accordingly judgment was entered decreeing specific performance of the contract, and directing that the $1000 deposited by appellee in the registry of the court as the agreed purchase price of the land be delivered to appellant after the cost of the proceeding should be deducted therefrom.

By his first assignment of error appellant· complains that the court, under the agreed statement of facts, erred in the conclusion of law that it had jurisdiction over the person of defendant to require him to specifically perform the alleged ·contract for the con-

veyance of the land, in that:    (1) The suit being for specific performance of an alleged contract to convey land, and not for the land itself, was a suit *in personam* and not *in rem*.    (2) Being a suit *in personam* and not *in rem*, and the defendant being a resident of the District of Columbia, and beyond the jurisdiction of the court, he could not, by service upon him in his domicile, be required to appear and defend such suit in the District Court of Jefferson County, Texas.

By his proposition following the assignment appellant urges that, being a resident of and having been served in the city of Washington, D. C., and not within the State of Texas, and this being a suit *in personam*, and not *in rem*, the court had no jurisdiction over the person of defendant and erred in so holding; that, being without jurisdiction over the person of defendant, it was further error to refuse to dismiss the suit.

At the very threshold of our investigations we are confronted with the inquiry, is a suit, having for its purpose the enforcement of a contract to convey land a proceeding *in personam* or is it a suit *in rem?* This question seems to be answered by the adjudications in this State.   The case of Miller v. Rusk, 17 Texas, 170, like the case under investigation, was a suit for specific performance, the difference between the two being that in that case one citizen of Texas sued another citizen of this State in the county in this State of plaintiff's residence; whereas in this case a citizen of Texas sues a nonresident of the State, in the county of plaintiff's residence.   In the case cited the defendant claimed the right to be sued in his domicile, and the court, speaking through Judge Wheeler, says:

"It is the right of the defendant to be sued in the county of his residence, subject only to exceptions enumerated in the statute.   (Hart. Dig., art. 667.)   The exception which is relied on to take the present case out of the operation of the general rule is the last in the enumeration of exceptions in the statute, and is thus expressed: 'In case where the recovery of land, or damages thereto, is the object of the suit, in which cases suit must be instituted where the land or a part thereof is situated.'   Is the present case within the exception? We think clearly not.   It is not a suit, the 'object' of which is 'the recovery of land, or damages thereto.'   But it is a ·suit to compel the specific execution of a contract to convey, or make title to land, without reference to the possession or injury to the possession or estate.   By the decree for title or the execution of a valid legal conveyance the sole object of the suit will have been consummated.   It looks to nothing beyond the specific performance of a contract to make title; and manifestly has not, for its object, either the recovery of land or damages thereto.

"The 'recovery of land' manifestly has reference to the possession; and 'damages thereto' as manifestly has reference to an injury to the possession, or to the freehold or estate; and not, as the argument of the appellant assumes, damages for the breach of the contract to make title.   Where the latter is the object the suit is merely personal; the recovery *in personam*, fixing only the personal liability of the party contracting, not affecting the right of property or pos-

session of the land contracted to be conveyed, and must be brought in the county of the defendant's residence. So in the present case, a decree would operate only a conveyance of the legal title, and should be binding upon the defendant personally to the extent of the obligation of his contract. It would not affect the possession of the land. And in the case supposed by counsel, of the inability of the defendant to make title, and a subsequent recovery in damages, it would not be for damages to land in any sense, but damages for the breach of contract; and there would be the same necessity to sue in the county of defendant's residence as in any other case of a suit for the breach of contract. Where the suit is upon the contract, whether it be to compel the specific performance of it or to recover damages for its breach, it is not a suit for the 'recovery of land or damages thereto,' and consequently is not within the exception and rule of the statute, which requires the suit to be brought within the county where the land lies, though it is not the county of the defendant's residence.

"It is not perceived that there is really any more foundation in the principle, for holding that the case is within the exception and that suit must be brought in the county where the land lies, where it is for the specific performance, than where it is for the rescission of a contract for the sale of land; and in the latter case we have heretofore decided that it is not within the exception. (Morris v. Runnels, 12 Texas, 175.) In an analogous case, lately decided at Galveston, the same opinion was maintained as to the scope and extent of the exception. (Hearst v. Kuykendall, 16 Texas, 327.) The court did not err in sustaining the plea to the jurisdiction, and the judgment is affirmed."

So far as we have been able to ascertain, this case has never been overruled or modified, and is the law in this State today, thus making the present suit an action *in personam,* and not *in rem.* Hearst v. Kuykendall, 16 Texas, 327; Cavin v. Hill, 83 Texas, 73. This being true, did the court err in not dismissing the suit? It will be noted by the agreement it was provided that, "The court shall determine whether it has jurisdiction over the person of the defendant upon which it has power to decree specific performance, and in considering this question the court shall consider and treat the record as though defendant had formally filed written pleas to the jurisdiction, negativing all the subdivisions of 1 Sayles' Texas Civil Statutes, art. 1194. . . . This agreement shall constitute the statement of facts and questions of law to be determined on any and all trials of this cause, whether by appeal or otherwise. . . ."

Giving full force and effect to the agreement, we must treat the questions raised by the assignment as if the formal plea to the jurisdiction of the court over the person of defendant had been filed in the court below. The suit being *in personam,* the defendant being a nonresident of Texas, and service being had on him at his domicile, and there having been no levy of an attachment upon property belonging to him situated in this State, no valid judgment could have been rendered against him. (Scott v. Streepy, 73 Texas, 547; Franz Falk Brewing Co. v. Hirsch, 78 Texas, 192), unless he voluntarily

appeared and submitted himself to the jurisdiction of the court. Did he by his appearance for the purpose of pleading *in limine* to the jurisdiction of the court waive his exemption of his nonresidence? This question, we think, must be answered in the affirmative. In York v. The State, 73 Texas, 651, it was held that an appearance in the courts of this State by a nonresident defendant served with citation without the State, even though such appearance be expressly declared to be limited to the sole purpose of presenting a plea to the jurisdiction of the court over his person, is a waiver of his immunity from the jurisdiction of the courts of this State by reason of his nonresidence and service without the State and has the effect to perfect such service. St. Louis, A. & T. Ry. Co. v. Whitley, 77 Texas, 128; Aetna Life Ins. Co. v. Hanna, 81 Texas, 487; Fairbanks v. Blum, 2 Texas Civ. App., 479. It is true that when the court overruled the plea to the jurisdiction the appellant had the right, on motion, to have the case carried over to the next term for trial upon its merits, but no such motion was made, and indeed it would appear from the agreement of the parties, that it was contemplated, in case the court refused appellant's motion to dismiss, the court should then proceed with the trial. Central & M. Ry. v. Morris, 68 Texas, 57. It follows, therefore, the court did not err in refusing to dismiss the case.

This brings us to a consideration of appellant's second assignment of error, which urges that the court erred in the conclusion of law that the letters set forth in the agreed statement of facts constituted a contract upon which the plaintiff is entitled to a decree of specific performance, in that such letters do not constitute an unconditional and unqualified contract to convey on the part of the defendant, nor an unconditional and unqualified agreement to accept the conveyance on the part of the plaintiff.

Appellant, in support of the assignment, contends that the facts do not prove a contract enforcible in law for two reasons: (1) Because there was no consideration paid by plaintiff to defendant, and at most the papers only make a *nudum pactum*. (2) Because the language of defendant in his letter of December 13, shows he did not intend to make a proposition to convey, but reserved the title, and was merely tentatively holding out inducement for further negotiations for a better offer.

In the view we take a consideration of the contention first above stated is unnecessary. We are of the opinion that the language of appellant's letter of December 13, showed no present intention to convey the land, and therefore reserved title in himself. Were we to disjoin the concluding sentence so as to make it read: "I may be willing to take $1000 for the land," the question would certainly be resolved in defendant's favor; but if we leave out this sentence, save the amount, and only construe its concluding paragraph, "if you are willing to pay this price, please let me know and I will write you acceptance of the deal," it is nearly equally certain, when plaintiff accepted, the construction would be in favor of plaintiff. The whole correspondence evidences that both parties believed the land to be oil bearing, the proposed purchaser desiring to obtain

it, the owner fencing for better terms; the former calling himself a "crank" for still having confidence in the supposed oil field, the latter stating his ignorance of developments, but asserting confidence in his ability to make a "big showing" if he had time; the would-be purchaser offering $65 per acre; the owner declining the offer but saying, "I may be willing to take $1000 . . . and if you are willing to pay this price let me know and I will write you acceptance of the deal," from all of which we are forced to the conclusion that the alleged proposition was not such a contract as bound Lucas to make a deed to Patton for the land upon the acceptance by the latter of the terms, and tender of the price suggested, as could be enforced in an action for specific performance.

If, however, there were any doubt upon the question, the subsequent correspondence between the parties, which is undisputed and was introduced in evidence as part of the agreed statement of facts, would remove the doubt, for when Patton wrote to Lucas that he would pay $1000 for the land, the latter, in his letter of January 13, 1906, promptly declined to accept the money and execute the deed, saying: ". . . I beg to say that in my letter of the 13th ultimo, I said 'that I may be willing to take $1000 for the land,' but after mature consideration, and in view of a possible oil strike in the future, would say, I am not willing to accept the money. You are on the ground and in far better position than I am here, to judge of the land value there, hence you will recognize the fitness of my remark." Watkins Land & Mortgage Co. v. Campbell, 100 Texas, 542. If Lucas had intended an unqualified offer to take $1000 for the land, would he have said: "I may be willing," etc.? We think not. The sentence can not be divided as it is inseparably interwoven. The offer to accept was necessarily connected with the qualifying words, "I may be willing to take;" and as thus construed, and taken in connection with Lucas's own explanation of his meaning, not only shows no intention to make a binding contract, but reserves to himself the right to refuse.

The judgment of the District Court is reversed and the cause remanded with the instruction, if upon another trial no further material testimony bearing upon the issue of the contract sought to be enforced be offered, to enter judgment or direct a verdict for appellant Lucas.

*Reversed and remanded.*