## ST. LOUIS & S. F. R. CO. v. BLOCKER et al.

(Court of Civil Appeals of Texas. Texarkana. April 20, 1911. On Motion for Rehearing, May 25, 1911.)

1. Appeal and Error (§ 1037*)—Harmless Error — Order on Affidavit of Amicus Curiæ.

Where one on whom the citation against defendant was served filed an affidavit in the court in which the cause was pending, purporting to act as an amicus curiæ, to the effect that he was not a representative of defendant, the order thereon, entered before any answer was filed or appearance entered by defendant for any purpose, that service on him was sufficient, and requiring defendant to answer, could not have been prejudicial, as an amicus curiæ is not a representative of either party, and an order involving an adjudication opposed to his suggestions does not affect the rights of the party for whose benefit they may have been intended.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1037.*]

2. Appearance (§ 24*)—Questioning Sufficiency of Service.

Whether defendant raise by motion or by plea the question of the sufficiency of the service on it, the effect is the same under Rev. St. 1895, art. 1243, providing that an appearance for the purpose of quashing service shall operate as an appearance at the next term of court.

[Ed. Note.—For other cases, see Appearance, Dec. Dig. § 24.*]

3. Principal and Agent (§ 119*)—Pleading and Evidence—Burden of Proof.

Plaintiffs, having filed a plea of non est factum to the defense of a release signed by B., averred to have been plaintiffs' duly authorized agent, defendant had the burden of proving, not only that the release had been executed by B., as plaintiffs' agent, but also by their authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 391–401; Dec. Dig. § 119.*]

4. Principal and Agent (§ 103*)—Apparent Authority.

Any apparent authority of B., under his contract with plaintiffs, making him their special agent to buy and ship timber of a certain kind, to release a railroad from liability for the burning of plaintiffs' timber piled on its right of way, would extend only to timber bought and shipped by him, and not to that bought and shipped by another such special agent of plaintiffs.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 278–293, 353–359; Dec. Dig. § 103.*]

5. Principal and Agent (§ 166*)—Ratification of Agent's Acts.

To bind the principal on the ground of ratification of the unauthorized acts of an agent, the ratification must be shown to have been with full knowledge of all the material facts.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 627–633; Dec. Dig. § 166.*]

6. Appeal and Error (§ 499*)—Assignments of Error—Bill of Exception.

Assignments of errors to exclusion of evidence cannot be considered where the bills of exception fail to state what objection was urged to introduction of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2297; Dec. Dig. § 499.*]

7. Trial (§ 253*) — Instructions — Incompleteness.

Any error, as against defendant, in an instruction that, if the jury believe from the evidence that plaintiffs in placing property on defendant's right of way in the manner and in the condition in which they did failed to use ordinary care, under the circumstances, for the protection of the property, and further believe such failure contributed to the destruction thereof, they shall find for defendant, is one of incompleteness, and not of positive misdirection, even though under the undisputed evi-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

dence plaintiffs' act did contribute to the destruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613-623; Dec. Dig. § 253.*]

8. RAILROADS (§ 484*) — FIRES — PROXIMATE CAUSE.

Placing poles on defendant's right of way to be shipped was not as matter of law a contributing cause to their destruction there, six months later, through fire set by sparks from defendant's locomotives, enough poles for a shipment having been collected within a month, and demand for cars having been made then, and repeatedly thereafter, and none having been furnished, but defendant's agent having made promises to furnish cars as soon as he could.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740-1746; Dec. Dig. § 484.*]

9. EVIDENCE (§ 113*)—MARKET VALUE.

Testimony of the price paid by plaintiffs for the timber, for destruction of which they sue, is not admissible to prove market value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259-296; Dec. Dig. § 113.*]

10. APPEAL AND ERROR (§ 1051*)—HARMLESS EVIDENCE—ADMISSION OF EVIDENCE.

That testimony as to market value was received from an incompetent witness is not ground for reversal, there having been other evidence not questioned or contradicted on which the verdict on that issue may be sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161-4170; Dec. Dig. § 1051.*]

11. PRINCIPAL AND AGENT (§ 3*)—EXISTENCE OF RELATION.

One with whom plaintiffs agreed that they would pay him certain prices for certain classes of timber when loaded on cars, he to buy from whom he would and at such prices as he could, was not their agent, though they agreed to, and did, advance him money to enable him to make purchases.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 3-12; Dec. Dig. § 3.*]

Appeal from District Court, Lamar County; T. D. Montrose, Judge.

Action by E. E. Blocker and others against the St. Louis & San Francisco Railroad Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

Andrews, Ball & Streetman, W. F. Evans, and Wright & Patrick, for appellant. Moore & Park, for appellees.

HODGES, J. Appellees Blocker and Miller, under the firm name of Blocker-Miller Company, were engaged in the business of purchasing and shipping cedar poles and piling at points on the line of the appellant's right of way in the state of Oklahoma during the years 1905, 1906, and 1907. On the 8th day of April, 1907, a quantity of their poles which had been placed upon the right of way of the appellant at a station called Kellond Switch, in Oklahoma, were destroyed by fire, and this suit was instituted for the purpose of recovering damages occasioned thereby. The petition alleged that the fire was caused by sparks escaping from a passing locomotive owned by the appellant company, and charged negligence in the equip-

ment and operation of the engine. The petition also alleged that the defendant was a railroad corporation operating a line of railroad from Ft. Smith, Ark., to Paris, Tex., and was engaged in the business of carrying freight and passengers for hire; that it had a local agent at Paris, Lamar county, Tex., named W. H. Upton, upon whom service by citation might be had. The aggregate damages sued for amounted to $1,925, the alleged value of the poles destroyed. The original petition was filed on the 8th day of May, 1908, and on the 19th day of the same month citation was served on Upton by the sheriff of Lamar county. On the 3d day of August following Upton, purporting to act as amicus curiæ, filed an affidavit in the court in which this cause was pending, stating, among other things, that at the time of the service of the citation upon him and at the time of filing his affidavit he was not the president, vice president, secretary, treasurer, general manager, local agent, or representative of any kind or character of the railroad company. To this affidavit the plaintiffs in the suit filed a reply reiterating the statement that Upton was the agent and local representative of the defendant railroad company at Paris, Lamar county, Tex., and alleging, in substance, that the defendant operated a continuous line of railroad from St. Louis, Mo., to Paris, Tex., a part of which was over tracks owned by the Paris & Great Northern Railway Company, a corporation chartered under the laws of the state of Texas; that the appellant, commonly called the Frisco Railway Company, constructed the track of the Paris & Great Northern Railway Company from Red river to the city of Paris; that the latter company owns no engines, cars, or equipment which would enable it to operate a railroad. It is also alleged that the officers, agents, and employés of the Paris & Great Northern Railway Company at Paris, Lamar county, Tex., were in fact the officers, agents, and employés of the defendant company. It seems that on the 10th day of August following the court considered the question of Upton's agency for the defendant company, and entered an order in which it is recited that "the court heard evidence, and, being fully advised, finds that the defendant St. Louis & San Francisco Railroad Company has been duly and legally served with citation, and that it should be required to answer in this suit." There also appears the following recitation: "To which action and ruling of the court the said defendant here now in open court duly excepts." On the same day the defendant filed an answer, in which it pleads in substance as follows: (1) A special exception to the petition "because the same shows upon its face that the court had no jurisdiction to hear and determine this cause so far as this

defendant is concerned." (2) A plea elsewhere in the record referred to as a plea of privilege, in which it is alleged that the defendant was incorporated under the laws of the state of Missouri, and which denies that defendant was incorporated under the laws of Texas, or that it runs or operates any line of railroad in the state of Texas, but avers that all of its lines of road are wholly outside of this state. Then follow other specific denials usually employed in pleas of privilege where the right is claimed to be sued in some particular county of the state. It is further alleged that it has no agents or representatives within the state of Texas upon whom citation could be lawfully served, unless certain persons thereinafter named should be considered such. It then proceeds to name C. E. Wynne, Jr., whose residence and office are in the city of Ft. Worth, Tarrant county, Tex., and other parties whose residences and offices are in Dallas county, Harris county, and Bell county. It then sets out the connection which those parties have with the transaction of its business, showing, if true, that they were not representatives upon whom citation could be served so as to bind the defendant. (3) A general demurrer and a general denial. (4) A special answer in which the charges of negligence are specially denied and contributory negligence pleaded. It also pleads in this portion of the answer the execution of a release signed by one J. R. Bunn, who it avers was the duly authorized agent of the plaintiffs, by the terms of which the railway company was released from any liability for damages caused by fires originating from sparks from its locomotives, or fire communicated from other material along the right of way. On September 8, 1908, at the same term, the court heard evidence upon the plea in abatement, and decided against the defendant. On January 11, 1909, at a subsequent term of the court, the plaintiffs filed a supplemental petition, in which they denied under oath the execution by them, or by any one having authority from them, of the release pleaded and relied upon by the defendant in its answer. On August 13, 1909, the defendant filed a supplemental answer in which, among other things, it is alleged that, if Bunn had no special authority to execute the release before referred to, he was held out as plaintiffs' agent vested with general authority, and that Bunn transacted with defendant all the business connected with said cedar poles and piling; that he bought, paid for, stored, and shipped the same, and transacted all business with defendant in connection therewith prior to and after the execution of the release before mentioned; also, that the plaintiffs knew that it was defendant's universal practice to refuse to permit the storing of such material on its right of way until such a release had been executed; that plaintiffs have been continuously since the execution of that release

storing cedar poles and piling and other material on the defendant's right of way under the terms of that contract. It is further alleged that the execution of the release by Bunn was within the scope of his apparent authority, and for that reason was binding upon the plaintiffs; that defendant relied upon the acts and representations of plaintiffs in holding out Bunn as their agent vested with general powers, and permitted the storing of said material on its right of way believing that it was fully protected by said contract. Appellant also pleaded that the plaintiffs were estopped from denying the powers of Bunn to execute said instrument. It is further alleged that, if Bunn was not authorized to execute the instrument, plaintiffs, by continuing to store said piling and other material on its right of way since its execution, with knowledge of Bunn's act, and without notifying defendant that Bunn had exceeded his authority, have acquiesced in and ratified the act of Bunn, and for that reason were bound by the release. On September 1, 1910, more than two years from the time defendant filed its original answer, the case was tried before a jury and a verdict rendered in favor of the plaintiffs for $1,450.

[1] The first assigned error complains of the ruling of the court upon the affidavit of Upton as amicus curiæ in holding that the service upon him was sufficient, and in requiring the appellant to file an answer. This order was entered before any answer was filed or appearance entered by the defendant for any purpose. It is not easily perceived how the defendant in that situation could have been injuriously affected by any action of the court in the ruling complained of. If Upton at the time citation was served upon him was not the representative of the appellant, the service upon him was a nullity, and conferred no right upon the court to render a personal judgment against it. When called upon to make some order, or to render some judgment, that would affect the rights of the defendant in the suit, it became the duty of the court, without any suggestion from an amicus curiæ, to ascertain whether by service of citation or otherwise it had acquired jurisdiction over the person of the defendant. An amicus curiæ is in no sense the representative of either party to the litigation, and an order which involves an adjudication opposed to his suggestions does not affect the rights of the parties for whose benefit they may have been intended. Such suggestions do not authorize the court to do more than that which was its duty to do without them. Jones v. City of Jefferson, 66 Tex. 576, 1 S. W. 903. A judgment rendered without jurisdiction over the person of the defendant would be as vulnerable when preceded by an order like that here complained of as it would be without it. The defendant had the right, after this ruling, to answer or not as it saw proper, and the utmost the

court could have done in the absence of an answer would have been to render a judgment by default. If appellant's rights were not affected by the order, then the making of the order furnishes no legal ground for complaint.

[2] The second error assigned complains of the action of the court in overruling the appellant's plea in abatement and to the jurisdiction. The proposition following that assignment is as follows: "The court had no jurisdiction over the St. Louis & San Francisco Railroad Company, and should have sustained defendant's plea to jurisdiction and of privilege." If by this assignment it is meant to call in question the action of the court in denying the appellant the privilege of having this cause tried in another county of this state, it is a sufficient answer to say that neither the pleadings nor the evidence disclosed the existence of facts upon which that statutory right could be asserted. On the other hand, if it is meant to question the authority of the court below to assume jurisdiction and render a personal judgment against the appellant, because it was a foreign corporation and not amenable to the processes of the courts of this state, the objection is equally untenable. The court inquired into the facts touching the validity of the service upon Upton as the agent of the appellant, and decided that it was binding. Instead of standing upon its plea to the jurisdiction and resting its defense upon that issue alone, appellant elected to plead to the merits of the controversy. Article 1243 of the Revised Civil Statutes of 1895 provides that an appearance for the purpose of quashing service shall operate as an appearance at the next term of the court. Whether the question as to the sufficiency of the service by which it is sought to bring the defendant into court be raised by motion or by plea, the legal effect of the appearance is the same. York v. State, 73 Tex. 651, 11 S. W. 869; Railway Co. v. Whitley, 77 Tex. 128, 13 S. W. 853; Insurance Co. v. Hanna, 81 Tex. 487, 17 S. W. 35; Lucas v. Patton, 49 Tex. Civ. App. 62, 107 S. W. 1143; York v. Texas, 137 U. S. 15, 11 Sup. Ct. 9, 34 L. Ed. 604. The record shows that the trial occurred more than two years after the answer was filed. There was no error in the rulings complained of.

[3] In the third assignment of error, complaint is made of the court in refusing to admit in evidence a written release purporting to have been executed by the Blocker-Miller Company through J. R. Bunn on April 5, 1905, by the terms of which the railway company, in consideration of permission to use the right of way for storing poles and piling, was released from any liability for damages by fires which might be communicated to such property by sparks escaping from its locomotives. The release purports to be general in its terms, and to cover all timber of any kind lying on the right of way adjacent to the appellant's main line. This is the instrument referred to in the pleadings, the execution of which was denied under oath. Upon the filing of the plea of non est factum by the appellees, it devolved upon the appellant to prove, not only that the release had been executed by Bunn as Blocker & Miller's agent, but by their authority.

[4] The testimony shows that in April, 1905, the date borne by this release, the appellees had contracts with different parties along the line of the appellant's railroad in Oklahoma, by which they purchased cedar and bois d'arc poles and piling at agreed prices. Among those parties were W. P. Brooks and J. R. Bunn. According to the evidence, Brooks was buying and selling cedar at and near Kellond Switch, while Bunn was handling bois d'arc in the vicinity of Grant and Hugo. They seem to have had no connection with each other, nor did they cover the same territory. The timber for the loss of which this suit was filed was purchased by Brooks, and was by him placed on the right of way at Kellond Switch for shipment. Bunn testified that he was buying timber under a contract requiring him to deliver it on board the cars at other points, that appellees furnished him money in advance with which to pay for timber, but that he was to receive a stated price for what he sold them. Concerning the execution of this release, Bunn testified substantially as follows: That some time during the year 1905 Morehead, a section foreman of the Frisco Railway Company, gave him some kind of a release, or written contract, to sign; that he asked Morehead for what purpose he desired his signature, and was told that he (Bunn) had some timber up there at Grant, and that Mr. Baker (appellant's claim agent) had asked him to get the release signed. Bunn hesitated a minute, did not read the release—or only a small portion of it, about enough to see what it was—and signed it. He had at that time some timber at Grant—about two car loads—which had not been placed upon the cars. He further testified that at the time he signed the release he was in a hurry, and only glanced at it, and saw that it was a fire release for the timber he had, and signed it. As to the information given by him to Miller, the only one of the appellees with whom he conversed regarding the execution of the release, he says: "My recollection is that I told Mr. Miller about this the next morning. I told him that the section foreman presented to me a release to sign on that stuff up there at Grant; that I had signed it, and didn't know whether I had done right or not. And he says, 'How much have you got up there?' And I says, 'About two or three cars.' I told him I had signed a release on some stuff we had up there. I signed Blocker-Miller's name to it because I thought I was using their money. I told him I had signed

their name to it." . He further testified: "Mr. Miller did not make any inquiry as to what the release covered. It is my recollection he said he guessed it was all right. We didn't have much stuff up there." This was two years before this fire occurred. There is no pretense that Bunn was given any express authority to execute such written releases, and his authority, if he had any, must be referred to the contract under which he was at the time working. Conceding that this contract had the legal effect of making him an agent of the appellees for the purpose of buying and shipping timber, such agency was clearly special, and his authority would not apparently extend beyond the power of making contracts and releases concerning timber with which he had some connection. He had none with the timber here involved. Hence there existed no occasion for any one being misled by this instrument. It was prepared in advance and presented to him by appellant's agent, and signed under circumstances clearly showing no critical examination of its contents by Bunn, and without any assertion of more authority than he really had. It is evident from Bunn's testimony that he did not at the time he signed the instrument think it covered any timber except that which he controlled or had purchased. His statements to Miller clearly indicate such an understanding.

[5] The only evidence to support the contention that the release was ratified by the appellees is that contained in Bunn's testimony before quoted. In order to bind the principal upon the ground that he has ratified the unauthorized acts of an agent, it must be shown that the former did so with a full knowledge of all the material facts. 31 Cyc. 1253, and cases there cited. Miller had no knowledge that Bunn had executed a general release covering all the timber they then had on the right of way and such as they might thereafter place there. Hence his acquiescence in what Bunn told Miller he had done could not be considered a ratification of something of which Miller had not been informed. Neither is there any evidence that Bunn was held out by the appellees as their agent having general authority to act for them. It is also insisted that appellees were bound by this release because they availed themselves of the privileges which it accorded. This contention is also unsupported by any evidence.

[6] The fourth, fifth, and sixth assignments of error complain of the refusal of the court to permit the introduction of testimony. The bills of exception presented in the record fail to state what objection was urged to the introduction of this evidence, and for that reason the assignments will not be considered. Browne v. Brick, 56 S. W. 995; M., K. & T. Ry. Co. v. Jarrell, 38 Tex. Civ. App. 425, 86 S. W. 632; Grinnan v. Rousseaux, 48 S. W. 781. But, without reference to the objection just stated, we think the assignments of error without merit.

[7] Upon the issue of contributory negligence, the court gave the following as a portion of his main charge: "If you believe from the evidence that the plaintiffs in this case in placing said property on the defendant's right of way in the manner and in the condition in which they did failed to use that degree of care and caution that an ordinarily careful and prudent person would have exercised under the same circumstances for the safe protection of said property, and if you further believe that such failure to exercise such care caused or contributed to cause the destruction of plaintiff's property, then you will find for the defendant." The court also refused a special charge upon the same subject, presented by appellant. To each of these error is assigned. It is contended that the portion of the main charge quoted above was erroneous because "it submitted to the jury the question whether the negligence of the plaintiffs in placing property on the right of way in the condition and manner in which they did contributed to or caused its destruction, because under the undisputed evidence such act did contribute or cause destruction of the same." The charge complained of submitted to the consideration of the jury a state of facts which, if found to be true, required a verdict in favor of the appellant. Conceding that the charge did not contain all to which appellant was entitled, the error, if any, consisted of its incompleteness and not in giving a positive misdirection. The authorities upon which the appellant relies refer to charges grouping facts upon which the plaintiff would be entitled to recover, and are therefore not applicable.

[8] Special charge No. 3 requested and refused was substantially the same as the charge above quoted, except that it assumed as a matter of law that, if the original placing of the timber upon the right of way was negligence, such negligence would defeat the right to recover. In other words, it assumed that such negligence would constitute a contributing cause of the damage. The testimony shows that the poles were placed upon the right of way of the appellant during the latter part of the summer of 1906, and remained there till destroyed by fire in April, 1907, a period of six or seven months. It was also shown that they were placed there for immediate shipment; that a sufficient number had been collected within a month after the first were put upon the ground; that a demand was made for cars for that purpose but none were furnished; and that thereafter repeated demands were made for cars, without success. The inference to be drawn from this evidence is that the poles remained where they were for that length of time on account of the inability of the owners to get cars in which to ship them away. While the tes-

timony shows that at the time of the fire the poles had become seasoned, and the bark on them dry and inflammable, it does not indicate what condition they were in when originally put upon the ground. The jury had a right to conclude that when first put there the poles were green, and that while in that condition there would be no probable danger of their being ignited by sparks escaping from passing locomotives. We may judicially know that wooden poles taken from the forest in a green condition are not specially inflammable. We also know that in process of time they become dry and may become more inflammable. If the cause of the poles' remaining upon the right of way six or seven months was the fault of the appellant in failing to sooner furnish cars, it cannot be said that the act of placing the poles in that situation was as a matter of law the proximate cause of their being destroyed. The jury had a right to infer that the appellees in placing the poles upon the right of way had created a condition which was not at the time dangerous, but one which became dangerous on account of the failure of the appellant to sooner furnish cars for transportation. The promises of the appellant's agent to furnish cars as soon as he could might in the opinion of the jury have induced the appellees to allow the poles to remain on the right of way. That point on the right of way seems to have been selected as the place for loading the cars when furnished. Under the evidence, the question of proximate cause was one for the jury, and not the court. G., C. & S. F. Ry. Co. v. McLean, 74 Tex. 646, 12 S. W. 843; Railway Co. v. Insurance Co., 55 Ark. 177, 18 S. W. 47; 3 Elliott on R. R., § 1238.

[9] While the plaintiffs' witness Brooks was on the stand counsel for appellant asked him on cross-examination this question: "Now, what was the price you received for this stuff [referring to the poles which were destroyed] from Blocker-Miller Company?" This was objected to upon the ground that it was not the proper criterion of market value, which objection was by the court sustained. Had this testimony been admitted, its effect would have been to acquaint the jury with the original cost price paid by appellees for this particular timber. Such testimony probably would have been admissible had there been no evidence of any market value of the timber at the time and place of its destruction, and the suit one to recover the actual value only. Such testimony, however, is not admissible to prove market value. Railway Co. v. Levy, 45 Tex. Civ. App. 373, 100 S. W. 195; Lincoln v. Packard, 25 Tex. Civ. App. 22, 60 S. W. 682; T. & P. Ry. Co. v. Wilson, etc., 46 Tex. Civ. App. 38, 101 S. W. 1042; 13 Ency. of Ev. 534.

[10] Appellant insists that, if the testimony was inadmissible for the purpose of proving market value, it should have been admitted

138 S.W.—11

on cross-examination for the purpose of impeaching the qualification of the witness to testify as an expert as to the market value of the poles at that place. It may be conceded that the witness was incompetent, and for that reason reject his entire testimony on that issue; still that would not require a reversal of the judgment. There was other evidence not questioned nor contradicted, upon which the verdict of the jury upon that issue may be sustained.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant calls attention to what it terms an error in stating the facts in the original opinion with reference to the time when Brooks and Bunn were engaged in buying timber for the appellees. It is claimed that there is no evidence in the record to show that at the time Bunn was buying timber either Brooks or any other person was engaged in the same character of business for the appellees. The record does not sustain that contention. Blocker, one of the appellees, testified: "I am acquainted with the witness J. R. Bunn. I am acquainted with W. P. Brooks, and both of them worked for us during the years 1905 and 1906." The following question and answer are taken from Bunn's testimony: Question by counsel for appellant: "Now let's get that down clear. The way I understand your agency is that you could buy at any place on the Frisco Railroad where you had prices on the particular stuff, or where you found stuff, except in places where there was another party engaged in buying for them? A. Well, if it hadn't been too far away, except if it been too far away and the freight rate would be too high I wouldn't get it. Grant and Hugo, I believe, was all the places that I bought any stuff on the Frisco Railroad. I heard Mr. Miller say they had somebody up there at Kellond Switch on the Frisco buying timber for them during the time I was working for them, and I had about all I could look after down there. When I made a purchase of stuff, I was to load it on the cars." We think this testimony justified our statement of the facts as previously given. However, if the view we take of the case is correct, it is wholly immaterial whether or not Bunn was at the time the only person engaged in buying timber for appellees.

In view of the extended argument made by appellant in its motion for a rehearing with reference to the assignments involving the consideration of the release executed by the witness Bunn, purporting to act as an agent for Blocker & Miller, we think it proper to more fully state the grounds upon which we sustained the rulings of the trial court. If this release was properly excluded from the jury, it follows that many of the other assignments presented in appellant's

brief relating to this instrument were correctly overruled. In the original disposition of the case we did not discuss the question of Bunn's agency, but held that the assignments were without merit even upon the assumption that he was an agent. The defense based upon that release depends upon the sufficiency of the evidence to establish the following conclusions: (1) That Bunn was at the time the agent of Blocker & Miller; (2) that he had actual or apparent authority to execute the release; (3) that, if he had no such authority, his execution of the release was afterwards ratified by Miller; (4) the estoppel of the appellees because of having received the benefits resulting from the execution of the release. We shall discuss only the first two questions; the others we think were sufficiently considered in the original opinion.

[11] Taking these in their order, the first is, Was Bunn at the time the agent of the appellees? The testimony of Bunn himself is perhaps the most favorable to the appellant upon that issue of any to be found in the record. He says: "I made a contract with Blocker-Miller Company some time in 1905, they to furnish me with a list of prices they would pay for certain classes of timber. They agreed to pay me that price for the timber f. o. b. the loading station. They advanced me money, and with that money I would buy from Dick, Tom, and Harry, or anybody, and I give them checks or paid the money—give those checks in my own name, never give any checks on Blocker-Miller Company for that. When I would get a car load of stuff, would ship that out according to shipping instructions given to me by Blocker-Miller Company, and then I would charge Blocker-Miller Company in my account with them for the value of that stuff, and they, in turn, would credit my account with them for the value of the stuff according to the prices agreed upon. Q. That stuff was yours until loaded on the cars? A. Well, I couldn't say. I don't know whether you would— Q. You bought it in your name? A. Yes. Q. And loaded it on the cars? A. Yes. Q. And they were to accept it after loaded on the cars? A. Yes, sir. Q. They had not paid you anyway? A. No, sir. They agreed to pay me so much for a certain class of timber loaded on the cars at a certain place, and to help me buy timber in sufficient quantities they simply furnished me money in advance; and the cars were shipped out according to their instructions, subject to inspection at the other end of the line, and if any exceptions at the other end of the line I lost it—that is, it was charged up to me by Blocker-Miller Company."

The following propositions of law may be considered elementary: The agent is the representative of the principal concerning the business which forms the subject-matter of the agency. What the agent does is done for the principal, and the latter is entitled to claim all the benefits resulting from the service thus rendered. If Bunn was the agent of Blocker & Miller in buying timber from those who had it for sale in that community, then the timber purchased by Bunn became the property of Blocker & Miller immediately upon its delivery to Bunn, and they became liable for the payment of the purchase price to those from whom it was obtained. In transactions where the relation of principal and agent exists, the former cannot be held liable to one from whom property is purchased for one price and to the agent for another. If the agent as such buys, he buys for his principal, and the price he pays is paid for the principal. The title acquired is the title of the principal. The retention of title by one who acquires property at one price to be again sold to another at a different price is wholly inconsistent with the relation of principal and agent. But such was the situation of Bunn with reference to Blocker & Miller. He bought timber from whom he pleased, paid for it with checks of his own at whatever price he saw fit, sold it to Blocker & Miller at a fixed price determined by a previous understanding, and took the difference as his profit. The facts of this case, when tested by the usual rules for determining the question of agency, do not present an issue for submission to the jury. Bunn was not held out as an agent by the appellees. All that he did was entirely consistent with the actual nature of the contract under which he operated. There was no evidence that the appellees at any time treated him, either privately or in public, as one having authority to represent them in the purchase of timber. It was Bunn's duty under his contract to load the timber purchased by him on the cars. Let us suppose that after having done this he procured bills of lading from the railroad company, and directed, in accordance with instructions previously given, the destination of the goods. Would that of itself imply authority to act as a general agent to execute releases of timber upon the right of way? We think not. The service of shipping or of procuring bills of lading for the shipper is no more than might be done by any person who delivers goods f. o. b. the cars at a point distant from the purchaser.

But, passing to the second question, and assuming that Bunn was an agent, what would be the limit of his apparent authority? The rule is that "every agency carries with it, or includes in it as an incident, all the powers which are necessary or proper or usual as a means to effectuate the purpose for which it was created, unless the power is circumscribed to something less by the authority creating the agency or by the circumstances of the business to which the agency relates." Collins v. Cooper, 65 Tex. 461. Bunn's agency, if he had any, was

to purchase and ship timber of a specified kind. This might include the authority to make a contract with reference to the timber handled by him similar to the contract involved in the case of Birge-Forbes v. Railway Co., 115 S. W. 333, cited and relied upon by appellant. But can it be said that it would also include the power to make a general contract not only as to the timber handled by him, but one including that which might be handled at the same time by other agents at other points, or by other contractors at other times? The release here under consideration was unlimited in its terms as to the time of its duration, and was to operate upon all timber owned by Blocker & Miller and placed upon the right of way along the appellant's main line. The evidence shows that Bunn had no actual authority to make so sweeping a contract. At most, Bunn's apparent authority would include the power of making contracts concerning the timber with which he had some business connection. This authority would not apparently embrace timber handled exclusively by Brooks and others, and with which Bunn had nothing to do.

We deem it unnecessary to discuss further the remaining questions involved in this motion.

The motion for rehearing is overruled.