**ST. LOUIS & S. F. R. CO. v. KISER.†**

(Court of Civil Appeals of Texas. April 15, 1911. Rehearing Denied April 29, 1911.)

1. REMOVAL OF CAUSES (§ 12*)—DIVERSE CITIZENSHIP—JURISDICTION OF FEDERAL COURT.

Under Act Cong. March 3, 1887, c. 373, § 1, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), providing that, where the jurisdiction of the Circuit Courts of the United States is founded only on diversity of citizenship, suit shall be brought only in the district of the residence of either the plaintiff or defendant, an action commenced in a state court by a citizen of another state, against a nonresident defendant, who is a citizen of a third state, cannot be removed into the Circuit Court of the United States, unless the plaintiff consents thereto, and a waiver by the defendant by filing its bond and petition for removal of its right to be sued in the state and district where either it or plaintiff resides is not sufficient.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 32, 33; Dec. Dig. § 12.*]

2. REMOVAL OF CAUSES (§ 12*) — DIVERSE CITIZENSHIP—CONSENT OF PLAINTIFF—PRESUMPTION.

Where plaintiff filed his action in a state court, and there is nothing in the record to indicate that subsequent thereto he consented to a removal of the cause to the Circuit Court of the United States, the presumption is that he objected to the removal.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 12.*]

3. RAILROADS (§ 33*)—FOREIGN COMPANIES—AGENTS—SERVICE OF PROCESS.

Rev. St. 1895, art. 1194, subd. 23, provides that suits against a railroad may be brought in any county through or into which it extends or is operated. Subdivision 25 provides that foreign corporations may be sued in any county where they may have an agency or representative. Acts 29th Leg. c. 25, provides that, in addition to means now provided by law, citation may be served on any agent who has an office in Texas who sells tickets or makes contracts for the transportation of passengers or property over any line of railway or part thereof of any such company. The local agent of defendant, a foreign railroad company, was served with process in an action for injuries. Held, under the evidence, that the agent was the local agent within the statute, hence plaintiff, a nonresident, had the right to bring and maintain the action in the county, where process was served.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 70, 71; Dec. Dig. § 33;* Corporations, Cent. Dig. §§ 2603, 2627.]

4. COURTS (§ 97*) — DECISIONS OF UNITED STATES COURTS—HOW FAR BINDING.

Where rulings of the United States Courts are not in harmony with decisions of the state courts of Texas, and no federal questions are involved, they are not binding on the state courts, and the State Supreme Court will follow the state court decisions in preference.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 329–334; Dec. Dig. § 97.*]

5. EVIDENCE (§ 549*)—EXPERT TESTIMONY.

Where a medical expert, having stated that he had examined the plaintiff, was asked to state the result of his examination and answered that he found an injury to the spine, and was then asked if the injury could have been caused by traumatism, answered "Yes," and gave the reasons for his opinion, his testimony was not based upon a hypothetical question, but upon a personal examination; hence the complaint that it stated a hypothesis that did not exist, and a conclusion therefrom, is unavailing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. § 549.*]

6. EVIDENCE (§ 549*)—HEARSAY.

Nor in such case was the evidence hearsay, as the facts were of witness' own knowledge based upon a personal examination of plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. § 549.*]

**7. EVIDENCE (§ 549*)—OPINIONS OF EXPERTS —ADMISSIBILITY.**

Nor was the testimony incompetent as to the conclusion or opinion of the witness, as he was not only an expert qualified to give his opinion upon the matter, but he gave his reasons or facts upon which his opinion was based.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. § 549.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by W. J. Kiser against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

W. F. Evans, Andrews, Ball & Streetman, and Head, Smith, Hare & Head, for appellant. Wolfe, Maxey, Wood & Haven, for appellee.

TALBOT, J. On September 13, 1909, appellee instituted this suit in the Fifteenth district court of Grayson county, Tex., against appellant, alleging that appellee was a citizen of the state of Oklahoma; that appellant was a citizen of the state of Missouri, and that appellant was engaged in operating and controlling lines of railway extending through the states of Oklahoma and Texas, over which it operates freight and passenger trains for the purpose of hauling freight and passengers for hire; that on the 31st day of May, 1908, appellee was a passenger on one of appellant's passenger trains in the state of Oklahoma, when, owing to the negligence of appellant, said train was derailed and appellee injured. Appellant presented petition and bond to remove the cause to the Circuit Court of the United States for the proper district, which petition was by the district court denied. Appellant presented a motion to quash the citation and a plea to the jurisdiction of the court, both of which were, by the court, overruled, and appellant was required to answer, which it did by a general denial and plea of contributory negligence. On March 2, 1910, the cause was tried and resulted in a verdict and judgment in favor of appellee for $7,500. Appellant presented its motion for a new trial, which was by the court overruled. Notice of appeal was given, the appeal perfected, and the cause brought to this court for review. It is not contended in this court that liability on the part of the appellant was not shown, or that the appellee was guilty of contributory negligence, or that the verdict is excessive.

[1] The first assignment of error complains of the court's action in denying defendant's petition to remove the cause to the Circuit Court of the United States for the Eastern District of Texas. There was no error in this action of the court. The act of Congress of March 3, 1887, c. 373, 24 Stat. 552, as corrected or amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), fixing the jurisdiction of the Circuit Courts of the United States, provides that where the "jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." In Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, opinion by Mr. Chief Justice Fuller, it was held by the Supreme Court of the United States that, under this statute an action commenced in a state court by a citizen of another state against a nonresident defendant, who is a citizen of a state other than that of the plaintiff, cannot be removed by the defendant into the Circuit Court of the United States. In the later case of Matter of Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, Mr. Justice Brewer delivering the opinion of the court, the holding in the Wisner Case was modified to the extent that though neither of the parties, plaintiff or defendant, was a citizen of the state in which the suit was filed, if the defendant should file his petition and bond and remove the case to the Circuit Court of the United States and the plaintiff waived all objections to such removal and consented thereto, the Circuit Court of the United States would have jurisdiction to hear and determine the cause. In the case at bar the defendant's petition for removal was denied, and nothing appears which indicates that the plaintiff in any manner waived his right to have the case tried in the state court or consented to the removal of the same to the Circuit Court of the United States. This being the state of the record, we think it must be held that the district court of Grayson county was not authorized to remove the case, even though it be conceded that the Moore Case, supra, is authority in the matter. The waiver upon the part of the defendant by the filing of its petition and bond for removal, to be sued in the state and district wherein either it or the plaintiff resided, was not sufficient to authorize the removal. To this had to be added the consent of the plaintiff, which does not appear to have been obtained.

[2] Having selected the state court in which to file his suit, and there being nothing in the record indicating that subsequent thereto he consented to a removal of it to the Circuit Court of the United States, the presumption should obtain, we think, that plaintiff did, in fact, protest and object to such removal. We do not think the court would have been warranted, over the protest or without the consent of the plaintiff, to have removed the case and forced the plaintiff to go into the federal court to object to the removal, and ask that the case be remanded.

[3] The second assignment of error is as follows: "The court erred in entertaining jurisdiction of this cause because no proper process in this case was issued and served upon defendant, as shown by defendant's bill of exceptions No. 1." It is contended under this assignment that there was no evidence that defendant was, in fact, operating its railroad, or doing business as such, in the state of Texas, and, inasmuch as the laws of this state prohibit foreign corporations from operating railroads or doing business as such herein, and inasmuch as plaintiff alleged, and the undisputed evidence showed, that defendant was a corporation of the state of Missouri, and that plaintiff was a citizen of Oklahoma at the time of the trial and at the time the injuries were inflicted, and that the injuries were received in Oklahoma, the court erred in assuming jurisdiction over the defendant and of this case. We conclude the assignment ought to be overruled. The authorities probably sustain appellee's contention that appellant by filing cross-interrogatories to be propounded to appellee's witnesses, Dr. C. W. Ballaine and E. M. Thompson prior to the presentation of its motion to quash the citation in this case, and the filing of its plea to the jurisdiction, entered its appearance and submitted itself to the jurisdiction of the court. Herndon v. Crawford, 41 Tex. 267; York v. State, 73 Tex. 651, 11 S. W. 869; Railway Co. v. McCarty, 29 Tex. Civ. App. 616, 69 S. W. 230; 3 Cyc. p. 504. But, however this may be, we think the evidence sufficient to show that appellant was doing business in this state, and that S. E. Peacock, upon whom service of citation was had, was its local agent, representing it in Grayson county, Tex. The evidence offered upon this feature of the case seems to be given in its entirety in appellant's brief, but it is too voluminous to be quoted in full in this opinion. Therefore the substance of only so much of it as in our opinion sustains our conclusion will be stated.

S. E. Peacock testified: That he was the local agent at Sherman for the St. Louis, San Francisco & Texas Railway Company, and solicited business for and received his compensation from said company. That all business that he got that goes north beyond Red river he routed over appellant's road. That Mr. Preston, the general freight agent at Ft. Worth, under whom his duties were performed, gave him directions to that effect. That it was understood that it was to be routed that way. That there was a roundhouse and repair shops in Sherman, and that he did not know to whom they belonged, but that cars of appellant were repaired at said shops that came from St. Louis to Sherman. That through trains, freight and passenger, came from Sapulpa and Francis, Okl., into Sherman, and likewise went from Sherman north to Francis and Sapulpa, and even as far as St. Louis.

The trainmen were employed and paid altogether by appellant. Many of them lived in Sherman; it being the end of a division. Checks for their compensation were issued by appellant at St. Louis, sent to witness, and delivered to the trainmen at Sherman by him.

W. C. Preston, the general freight agent of the appellant, testified: That he did not know where the lines of the appellant and the Texas company joined. That appellant ran through trains from Sapulpa to Sherman without any transfer of freight or cars, and the Texas company ran through cars from Sherman to Sapulpa in the same way. That all the freight agents in Texas solicited freight, not only for the Texas company, but for the appellant. That the appellant, the St. Louis, San Francisco & Texas, and Ft. Worth & Rio Grande Railways, all belonged to the same system of roads known as the "Frisco System."

W. B. Drake testified: That he was the general superintendent of the Texas Company and the Ft. Worth & Rio Grande Railway. That the trainmen that run trains from Sapulpa and Francis to Sherman are all employed and paid by the appellant. The engines and rolling stock all belong to the appellant. The freight brought into Sherman by the appellant is loaded and unloaded at the terminals in Sherman. Said terminals are under the charge and control of the local agent at Sherman (Peacock) and appellant pays 70 per cent. of the cost of maintaining said transfer sheds in paying laborers, clerks, and those who superintend the work. That he was a stockholder in the Texas company, having only one share, which cost him nothing.

J. T. Cobb testified, in effect: That he was for about three years traveling passenger agent for the St. Louis, San Francisco & Texas Railway Company and for the Ft. Worth & Rio Grande Railway Company. That during said time he went to Oklahoma and other points for the purpose of soliciting business for the appellant. That he solicited business for the appellant, the Texas Company, the Ft. Worth & Rio Grande, and Paris & Great Northern Railway Company all at the same time. That he went to Madill, Okl., a station on the line of the appellant company, and investigated the conduct of a local agent there, "turned him in," and had him discharged. That he also reported a freight conductor on the line of appellant in Oklahoma for carrying passengers and had him discharged. That, although sent there to do that work, he was paid nothing by the appellant company.

W. N. Downs, the ticket agent for the St. Louis, San Francisco & Texas Railway Company, at Sherman, testified: That he sold through tickets over that company's road and the appellant's road. That he sold a mileage ticket good for travel over the roads of both of these companies and over

the Ft. Worth & Rio Grande, issued by C. W. Strain, general passenger agent for the Texas company. That there was no station at the state line where the road of the St. Louis, San Francisco & Texas Railway Company and the road of appellant joined. That there was no platform there and no means for passengers to board trains or alight from trains at said point, although a ticket issued from Sherman over the Texas Company's road and appellant's road had a coupon calling for the state line and giving the destination on the appellant's line. That he was directed by Mr. Strain, general passenger agent of the Texas Company, to sell tickets over the appellant's line and the Texas line, and was sent through tickets printed that way. G. E. Dornblazer testified that he was trainmaster of appellant and lived at Francis, Okl. He employed the brakemen and conductors, and had control over them on the Red River Division of the appellant, which extends from Francis, Okl., to Sherman, Tex. That some of the trainmen of the appellant resided in Sherman. That trainmen in the freight department ran from Sherman to Francis and return, and in the passenger department from Sherman to Sapulpa and return, and were all paid by the appellant. That Mr. Hutcherson was the general superintendent and lived at Springfield, Mo., and had jurisdiction over several divisions of appellant's road, among them Monett to Paris over appellant's road and the Paris & Great Northern and over the Red River Division from Sapulpa to Sherman over appellant's road and that of the St. Louis, San Francisco & Texas. That all passenger and freight trains were operated without change from Francis, Okl., to Sherman without change of employés or uniform. Train orders from Francis controlled the operation of trains into Denison, from which point they were run over the Houston & Texas Central to Sherman. That repairs made in the roundhouse at Sherman on the rolling stock were paid for by appellant. That as trainmaster of the Red River Division he had the authority to direct and control all trains and employés thereof from Francis, Okl., to Denison, Tex. It further appears that the relations between the St. Louis, San Francisco & Texas Railway Company, the Ft. Worth & Rio Grande Railway Company, and the appellant were so intimate that the attorneys representing the two first-named companies in Texas were employed by the first-named company, and that for compensation paid by the second-named company alone they had answered for and represented the appellant in all suits filed against it in Grayson County, Tex., for a period of six or seven years.

The force of the testimony stated is not overcome or materially affected by the other testimony in the case, but the evidence taken as a whole is clearly sufficient, we think, to warrant the conclusion that S. E. Peacock was such a local agent of appellant as is contemplated by subdivisions 23 and 25 of article 1194 of the Revised Statutes of 1895, and the Acts of the Legislature of 1905, p. 29, and therefore service upon him brought appellant into court. The record shows that the Ft. Worth & Rio Grande Railway, the St. Louis, San Francisco & Texas Railway Company, and the appellant belong to the same system of roads, known as the "Frisco System," and that all of the train crews running from the north into Sherman or from Sherman north are employés controlled and paid by the appellant, and that the engines and all rolling stock used belonged to appellant. Peacock was the admitted agent of the St. Louis, San Francisco & Texas Railway Company, at Sherman, and it is at least fairly deducible from the undisputed testimony that this company is but a creature of the appellant, formed for the purpose of transacting business in this state for appellant under a different name. The record further shows that Peacock not only solicits business for the appellant and makes freight contracts for it, but superintends, it seems, the loading and unloading of its freight at the Sherman yards, brought by appellant's trains and operated by its employés from the north and carried out in like manner. His instructions from his superiors were to the effect that he must route freight secured by him over appellant's road, and he pays appellant's employés at Sherman by delivering checks to them issued by appellant at St. Louis, Mo., and sent to him at Sherman. That Peacock was the agent of appellant and the statutory person upon whom service of citation should have been made is well sustained by the evidence. Therefore, the evidence being sufficient to show that appellant had such an agent in Grayson county, and that it was doing business in this state, the plaintiff, a nonresident, had the right to bring and maintain this suit in that county, and there was no error in overruling the motion to quash the citation and plea to the jurisdiction. Buie v. Railway Company, 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861; Railway Company v. Sizemore, 116 S. W. 403; Railway Company v. Godfrey, 48 Tex. Civ. App. 616, 107 S. W. 1135. See, also, Railway Company v. Arms, 136 S. W. 1164, in which the question upon facts practically the same as in the present case was by this court, in an opinion delivered by Mr. Chief Justice Rainey, and in which there is a clear and concise statement of the facts, this day decided adversely to appellant.

Appellant contends that the principles announced in the cases of Peterson v. Railway, 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, and Green v. Railway, 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, are applicable to the facts of the case at bar, and that unless

these principles are ignored it must be held that the appellant was not "doing business" in this state in a sense to subject it to the jurisdiction of her courts. We shall not enter upon a discussion of these cases.

[4] If their facts are not dissimilar to the facts of the instant case, then the rulings of the court therein are not in harmony with the decisions of the courts of this state, and, no federal question being involved, they are not conclusive or binding upon us, and we prefer to follow the decisions of our own courts.

The third, fourth, fifth, and sixth assignments attack the court's action in overruling appellant's motion to quash the depositions of certain witnesses. The ground upon which the depositions were sought to be quashed was that service of the precept to take them was had upon S. E. Peacock, who was not an agent of appellant. This question has been decided adversely to appellant's contention in disposing of its second assignment of error and need not be further discussed.

[5] Appellant's seventh assignment complains of the admission of certain testimony of Dr. E. M. Thompson. The objection is that the answer states a hypothesis that the witness does not testify exists, and states a conclusion based on such hypothesis, and states matters of fact which he could only know from hearsay and is the opinion and conclusion of the witness. We do not think the objection finds support in the facts. The question eliciting the answer objected to is not a hypothetical one. No facts are sub-mitted to the witness in the question and his opinion thereon invoked. The witness, having stated that he had examined the plain-tiff, was asked to state the result of his examination. He answered that he found an injury to the spine. He was then asked, in substance, to state whether the injury found could have been caused by traumatism. To this question he answered, "Yes," and proceeded to give his reasons for his opinion. His testimony is based entirely upon his own examination, and not upon a hypothetical question propounded to him.

[6] This being true, he did not state matters of fact which he could only know from hearsay, because the facts stated were of his own knowledge acquired by a personal examination of the plaintiff. [7] Neither was the testimony incompetent because it was the conclusion and opinion of the witness. He was not only an expert, qualified to give his opinion upon the matter undergoing investigation, but gave the reasons or facts upon which his opinion was based. If, however, the testimony was objectionable for any reason urged by the appellant, the same would furnish no ground for a reversal of the case for the reason that testimony of the same character, as we understand it, was introduced without objection.

The eighth assignment of error presents no reversible error, and is overruled.

The verdict of the jury is sustained by the evidence. The appellant has suffered no substantial injury by any ruling of the court of which it complains, and the judgment will be affirmed.