ATCHISON, T. & S. F. RY. CO. v. STEVENS. (No. 644.)

(Court of Civil Appeals of Texas. El Paso. Jan. 25, 1917. On Rehearing, Feb. 15, 1917.)

1. COURTS ☞7—TRANSITORY ACTION—PERSONAL INJURIES.

An action for damages for personal injuries is transitory, and may be maintained wherever a court is found that has jurisdiction of the parties and of the subject-matter.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 14, 16, 22–31.]

2. CORPORATIONS ☞669—FOREIGN CORPORATIONS — ACTIONS — GENERAL APPEARANCE — SUBMISSION TO JURISDICTION.

Where a foreign corporation, after the suggestion as friends of the court of those who had been served as its agents that they were not such agents had been overruled, appeared to claim its privilege to be sued in another county, and thereafter answered to the merits, it submitted to the jurisdiction of the court and eliminated any question of the sufficiency of the service.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2641, 2642.]

3. COURTS ☞97(6)—RULES OF DECISION—DECISIONS IN FEDERAL COURTS.

Though the question of whether service was had on a foreign corporation so as to give the state court jurisdiction over an action against it is a federal question on which the decision of the United States Supreme Court is final, the question of the privilege of such corporation to be sued in a particular county is a state question on which the decisions of the state court are controlling, though contrary to those of the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 333.]

4. RAILROADS ☞33(2) — FOREIGN CORPORATION—VENUE OF ACTIONS.

A foreign railway corporation may be sued in a county in which it is doing business through the instrumentality of a domestic corporation which operates a line of railway connecting with the foreign corporation's line at the state boundary.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 71.]

5. MASTER AND SERVANT ☞295(1)—INJURIES TO SERVANT—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—ASSUMPTION OF RISK.

In an action for personal injuries to a fireman on a helper engine, who fell from the tender, where he had gone with the engineer's knowledge to relight the markers, when the engine was started backwards without warning, a charge that an employé may assume that his

fellow employés will exercise ordinary care in the discharge of their duties incident to their employment is not erroneous as disregarding the exception to the rule there stated, applying where the servant has knowledge of the negligence of his employer and of the danger created thereby, where the evidence, though it showed that the engine was moved in its customary manner, did not show that it was customary to move it without warning to the fireman if he was or might be in a position of danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168, 1169, 1179.]

6. TRIAL ☞296(6) — INSTRUCTIONS—CURE BY SUBSEQUENT INSTRUCTIONS.

If the giving of that charge was error, it was cured by a subsequent portion of the court's charge that if plaintiff knew that the engineer intended to move the engine backward in the manner he did, or could have known it, and with such knowledge failed to protect himself, he assumed the risk, and by a charge given at defendant's request that if it was the custom to detach engines from the train without giving any signal to the fireman, and plaintiff knew of that custom, and the engine was moved in the usual and customary manner known to plaintiff, plaintiff could not recover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709.]

7. TRIAL ☞295(1) — INSTRUCTIONS AS A WHOLE.

The instructions given at the trial must be considered as a whole.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703, 704, 713, 714, 717.]

8. MASTER AND SERVANT ☞294(5)—INJURIES TO SERVANT—INSTRUCTIONS—NEGLIGENCE— KNOWLEDGE OF PLAINTIFF'S DANGER.

In an action for injuries to a fireman, who fell from the tender, where he had gone with the engineer's knowledge to relight markers, when the engine was started backward without warning, an instruction which called attention to various features of the evidence and stated the facts the jury must find to render a verdict for plaintiff, but which omitted any reference to the question whether the engineer as an ordinarily prudent man ought to have known under the circumstances that the fireman was in a place of danger, was erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1164.]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by Ben Stevens against the Atchison, Topeka & Santa Fé Railway Company. Judgment for the plaintiff, and defendant appeals. Reversed and remanded, and opinion modified on application for rehearing, but rehearing denied.

Turney & Burges, of El Paso, and A. H. Culwell and Terry, Cavin & Mills, all of Galveston, for appellant. Geo. E. Wallace, P. E. Gardner, and W. S. Berkshire, all of El Paso, for appellee.

HIGGINS, J. Stevens filed suit against appellant in the district court of El Paso county, Tex., to recover damages arising from personal injuries. He alleged that he resided at Las Vegas, N. M., and that defendant was a foreign corporation duly incorporated and having a local agent and maintaining an office in El Paso county, Tex.; that it owned and operated a line of railroad extending from El Paso, Tex., northerly, through the state of New Mexico and from the state of New Mexico across the northerly part of Texas, where it maintained an office and had a local agent; that W. R. Brown and R. F. Goering were local agents of defendant in El Paso county, and F. C. Fox was its general manager and resided at Amarillo, Tex.; that it also had a number of conductors who were operating trains over defendant's line of railway from San Marcial, N. M., to and into El Paso county, Tex.; that defendant was engaged in interstate commerce. The plaintiff further alleged that on August 22, 1914, he was in defendant's employment as a locomotive fireman, and upon that date, while in the discharge of his duties, he sustained personal injuries in the state of New Mexico through defendant's negligence, whereby he was damaged in the sum of $30,000, for which he sought judgment. Upon this petition, citations were issued and served in due form upon said Brown, Goering, Fox, and a conductor named Watlington, the same having been served in time to require answer to the May term, 1915. At the May term, Brown, Goering, Fox, and Watlington appeared as friends of the court, and for its information filed affidavits denying that they were agents of defendant. The affidavit of Fox further denied that the defendant owned or operated a line of railroad in Texas, and denied that it was doing business in Texas.

Upon hearing of the issues raised by the amici curiæ much evidence was offered which, under the view entertained by us, it is unnecessary to state in detail.

At the November term, on, to wit, December 18, 1915, the court entered an order that the affidavits of the amici curiæ—

"be overruled and held for naught, and that the defendant company be required to appear and answer herein, to which action of the court *the defendant*, without waiving its rights to insist upon said affidavits, *then and there in open court excepted*. It is further ordered by the court, for cause shown, that defendant be allowed sixty (60) days after the adjournment of this term of this court to prepare and file its statement of facts and bills of exceptions." Italics ours.

By bill of exception, it is also shown that when the affidavits of the amici curiæ were overruled—

"defendant then and there in open court excepted and tenders this its bill of exception, and says that the court in not holding that it had no jurisdiction of this cause, as shown by the evidence and the affidavits of the amici curiæ, who were served as agents of defendant in this cause, and who appeared as friends of the court and filed their affidavits showing that at the time of the service, the defendant herein was not doing business in El Paso county, had no agent in El Paso county, Tex., upon whom proper service could be made, and that said parties so served were not such agents, and that service upon them would not require defendant to answer herein, all of which has been

shown by the evidence offered on said hearing, and the court erred in assuming jurisdiction over the defendant, and in ruling that the defendant should answer herein, to all of which rulings of the court, the defendant having at the time excepted, here now presents this its bill of exception, and prays that the same be allowed and made a part of the record herein."

On December 18, 1915, and after the court had overruled the suggestions of the amici curiæ, the defendant filed a plea of privilege claiming the right to be sued in either of the counties of Potter, Hemphill, Galveston, Johnson, or Cooke, admitting, for the purpose of that plea, that it was doing business in those counties, and that the district courts of said counties had jurisdiction over its person, and that it could be sued therein. On the date of its filing, the plea of privilege was overruled, to which action the defendant took an exception and was allowed 60 days in which to prepare its statement of facts and bills of exception.

The record does not contain the defendant's first original answer, and is silent as to the date upon which it was filed; but on January 3, 1916, it filed its first amended original answer upon the merits.

The cause came on for trial at the January term, 1916, resulting in verdict and judgment for $7,500 in plaintiff's favor, from which the defendant prosecutes this appeal.

[1] Appellant first challenges the jurisdiction of the courts of Texas. The cause of action is transitory, and the district court of El Paso county had jurisdiction over the subject-matter. Railway Co. v. Sowers, 213 U. S. 55, 29 Sup. Ct. 397, 53 L. Ed. 695. In this case Sowers, a citizen of Arizona, sued this same defendant in the district court of El Paso county, Tex., and obtained judgment for damages arising from personal injuries received by him in the territory of New Mexico. In that case Mr. Justice Day said:

"An action for personal injuries is universally held to be transitory, and maintainable wherever a court may be found that has jurisdiction of the parties and the subject-matter. Rorer, Interstate Law, 154, 155; McKenna v. Fisk, 1 How. 242, 11 L. Ed. 117; Dennick v. Central R. Co., 103 U. S. 11, 18, 26 L. Ed. 439, 441. Undoubtedly, where the cause of action is created by the state, as is the action to recover for death by wrongful injury, there is no objection to the enforcement of the law because it arose in another jurisdiction. Northern P. R. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; Stewart v. Baltimore & O. R. Co., 168 U. S. 445, 449, 18 Sup. Ct. 105, 42 L. Ed. 537, 539."

[2] So there remains only to be determined whether the court lawfully acquired jurisdiction over the defendant's person. In the disposition of this question, it may be assumed, under the authority of the United States Supreme Court decisions, that the parties upon whom the citations were served were not agents of defendant, that defendant was not doing business in Texas, and therefore jurisdiction over the person of defendant was not acquired by the service of that process.

But under the authority of York v. State, 73 Tex. 651, 11 S. W. 869, it must be held that the defendant submitted its person to the jurisdiction of the Texas courts by its action in filing a plea of privilege and answer to the merits after the suggestion of the amici curiæ had been overruled. If the action of the court in overruling the suggestion was erroneous, the defendant was under no obligation to appear. When it did appear it submitted itself to the jurisdiction of the court, and any question as to the sufficiency of the service and jurisdiction over the person was thereby eliminated. The plea of privilege having been filed and overruled at the November term, 1915, service was perfect at the January term, 1916. Railway Co. v. Blocker, 138 S. W. 156, and cases there cited. York v. State was carried to the Supreme Court of the United States, and it was there held that the construction by the state Supreme Court of the statutes upon which the ruling in the case was based must be accepted as correct, and that the only federal question involved was the power of the state in respect thereto. It was further held that the statutes did not contravene the Fourteenth Amendment to the federal Constitution, and the judgment of the Texas court was upheld. York v. State, 137 U. S. 15, 11 Sup. Ct. 9, 34 L. Ed. 604. The Supreme Court of the United States in the very recent case of Western Life Indemnity Co. v. Rupp, 235 U. S. 261, 35 Sup. Ct. 37, 59 L. Ed. 220, reviewed and reaffirmed its previous holding in York v. State. So far as we are advised, the correctness of the ruling in the case has never been successfully challenged. The principle there announced has been applied in many cases subsequently arising, and was approved in the recent case of Banco-Minero v. Ross, 106 Tex. 522, 172 S. W. 711.

Upon the jurisdictional question, Railway Co. v. Blocker, supra, is parallel to this case. In that case, in which a writ of error was denied, Judge Hodges said:

"The first assigned error complains of the ruling of the court upon the affidavit of Upton as amicus curiæ in holding that the service upon him was sufficient, and in requiring the appellant to file an answer. This order was entered before any answer was filed or appearance entered by the defendant for any purpose. It is not easily perceived how the defendant in that situation could have been injuriously affected by any action of the court in the ruling complained of. If Upton at the time citation was served upon him was not the representative of the appellant, the service upon him was a nullity, and conferred no right upon the court to render a personal judgment against it. When called upon to make some order, or to render some judgment, that would affect the rights of the defendant in the suit, it became the duty of the court, without any suggestion from an amicus curiæ, to ascertain whether by service of citation or otherwise it had acquired jurisdiction over the person of the defendant. An amicus curiæ is in no sense the representative of either party to the litigation, and an order which involves an adjudication opposed to his suggestions does not affect the rights of the parties for whose benefit they may have been in-

tended. Such suggestions do not authorize the court to do more than that which was its duty to do without them. Jones v. City of Jefferson, 66 Tex. 576, 1 S. W. 903. A judgment rendered without jurisdiction over the person of the defendant would be as vulnerable when preceded by an order like that here complained of as it would be without it. The defendant had the right, after this ruling, to answer or not, as it saw proper, and the utmost the court could have done in the absence of an answer would have been to render a judgment by default. If appellant's rights were not affected by the order, then the making of the order furnishes no legal ground for complaint.

"The second error assigned complains of the action of the court in overruling the appellant's plea in abatement and to the jurisdiction. The proposition following that assignment is as follows: 'The court had no jurisdiction over the St. Louis & San Francisco Railroad Company, and should have sustained defendant's plea to jurisdiction and of privilege.' If by this assignment it is meant to call in question the action of the court in denying the appellant the privilege of having this cause tried in another county of this state, it is a sufficient answer to say that neither the pleadings nor the evidence disclosed the existence of facts upon which that statutory right could be asserted. On the other hand, if it is meant to question the authority of the court below to assume jurisdiction and render a personal judgment against the appellant, because it was a foreign corporation and not amenable to the processes of the courts of this state, the objection is equally untenable. The court inquired into the facts touching the validity of the service upon Upton as the agent of the appellant, and decided that it was binding. Instead of standing upon its plea to the jurisdiction and resting its defense upon that issue alone, appellant elected to plead to the merits of the controversy. Article 1243 of the Revised Civil Statutes of 1895 provides that an appearance for the purpose of quashing service shall operate as an appearance at the next term of the court. Whether the question as to the sufficiency of the service by which it is sought to bring the defendant into court be raised by motion or by plea, the legal effect of the appearance is the same. York v. State, 73 Tex. 651, 11 S. W. 869; Railway Co. v. Whitley, 77 Tex. 128, 13 S. W. 853; Insurance Co. v. Hanna, 81 Tex. 487, 17 S. W. 35; Lucas v. Patton, 49 Tex. Civ. App. 62, 107 S. W. 1143; York v. Texas, 137 U. S. 15, 11 Sup. Ct. 9, 34 L. Ed. 604. The record shows that the trial occurred more than two years after the answer was filed. There was no error in the rulings complained of."

Aside from the filing of the plea of privilege and answer to the merits, it may be that the defendant submitted itself to the jurisdiction of the court by its appearance and taking exception to the action of the court in overruling the suggestions made by the amici curiæ. Mueller v. Heidemeyer, 49 Tex. Civ. App. 259, 109 S. W. 447 (writ of error refused); Railway Co. v. Shields, 56 Tex. Civ. App. 7, 120 S. W. 222 (writ of error refused); Railway Co. v. Scoggin, 57 Tex. Civ. App. 349, 123 S. W. 229; Degetau v. Mayer, 145 S. W. 1054; Railway Co. v. McCarty, 29 Tex. Civ. App. 616, 69 S. W. 229; Railway Co. v. Kiser, 136 S. W. 852 (writ of error refused). But as to this, no ruling is made, as we deem it clear that submission was made for the reason first indicated.

[3] The next ground of error presented relates to overruling the plea of privilege. This presents a question of venue and privi-

lege. No jurisdictional or federal question is involved in its consideration. Railway Co. v. Whitley, 77 Tex. 126, 13 S. W. 853.

Whether or not the courts of Texas had jurisdiction over the person of defendant by virtue of the service had in this case presented a federal question, and in determining this question, the authority of the decisions of the United States Supreme Court is supreme, and it is the duty of the state courts to yield to this authority. Railway Co. v. Cox, 106 Tex. 74, 157 S. W. 745. But where rulings of the United States Supreme Court are not in harmony with decisions of the Supreme Court of Texas, and no federal question is involved, they are not binding on the courts of Texas, and the state courts will follow the decisions of its own Supreme Court. Railway Co. v. Kiser, 136 S. W. 852. So, in determining whether or not the defendant could rightfully insist upon its plea of privilege to be sued in some county in the state other than El Paso county, we will follow the decision of our own Supreme Court.

[4] Tested by the opinion rendered by Judge Brown in Buie v. Railway Co., 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861, there is ample evidence in this record to sustain a finding by the trial court that the defendant was doing business in El Paso county through the instrumentality of the Rio Grande, El Paso & Santa Fé Ry. Company, a Texas corporation, having offices and agents in El Paso county, and which owned and operated a line of railway from the city of El Paso in El Paso county, northwardly to the Texas-New Mexico boundary line, where it connected with the railway line of defendant. The facts are very similar to the Buie Case, and will sustain a finding that the Texas corporation was a mere mask and the instrument by which the defendant carried on its business in said state and county. As such, the defendant was really represented by the agents of the Texas corporation, and venue was properly laid in El Paso county where such agents were stationed. Indeed, appellant does not seem to seriously question that the facts in this case bring the same within the rule announced in the Buie Case, but it is asserted that case was overruled in the later case of Railway Company v. Cox, supra. The opinion in the Cox Case was also by Judge Brown, and it was said:

"That case (the Buie Case) was decided upon practically the same facts as the Peterson Case (205 U. S. 364) [27 Sup. Ct. 513, 51 L. Ed. 841]. The Supreme Court of the United States did not mention the Buie Case in the Peterson Case, but the effect of the decision in the latter case is to overrule the other. Upon that class of questions the authority of the Supreme Court of the United States is superior, and this court acknowledges the decision in the Peterson Case as the law and will follow and enforce it."

But it must be borne in mind that in this quotation a federal question was being discussed by Judge Brown, namely: Whether

jurisdiction had been acquired over a nonresident railroad corporation which made no appearance and against whom a personal judgment had been rendered, based upon service had on one White, an alleged agent. White, as amicus curiæ, had filed an affidavit that he was not the agent of the nonresident corporation. The court required no proof of White's agency, and submitted the cause against the nonresident as if it had been served and judgment was rendered against it. This, of course, raised a federal question, and in deciding the same, Judge Brown yielded to the superior authority of the United States Supreme Court, but we do not understand that it was the purpose to recant the correctness of the views expressed in the Buie Case. And unless the rule announced in the Buie Case be overruled, for all purposes and held to be erroneous, then in deciding questions other than those of a federal nature, this case must be followed by the courts of Texas. In deciding such questions, this court will follow the Buie Case until the Supreme Court of the state shall hold that it is incorrect in principle, and not to be regarded as authority even in cases raising no federal question.

Furthermore, as is indicated above, the record affirmatively discloses that when the court overruled the suggestions of the amici curiæ, and prior to the filing of the plea of privilege, the defendant appeared and excepted to the action of the court in overruling the suggestion, and took a 60-day order in which to prepare and file a statement of facts and bills of exception.

As stated by Judge Hodges in the quotation above made from Railway Company v. Blocker, supra, the action of the court in overruling the suggestion did not injuriously affect the rights of defendant. It did not compel it to appear if the parties were in fact not its agents, and it was not doing business in Texas. It could have remained aloof, and when it saw fit to appear and except to the court's action in making such order and obtained the 60-day order in which to prepare and file a statement of facts and bills of exception, it may well be considered that it waived its privilege that the case be tried on its merits in some county other than El Paso. Howe, etc., v. Taylor, 147 S. W. 656; Railway Co. v. Kiser; Mueller v. Heidemeyer; Railway Co. v. Scoggin; Degetau v. Mayer; Railway Co. v. McCarty, all supra.

We therefore conclude that no error is shown in overruling the plea of privilege.

The fourth assignment complains of an objectionable question asked by plaintiff's counsel upon cross-examination of one of the defendant's witnesses. The defendant promptly objected, and the objection was sustained, and the jury instructed by the court to disregard the question. Appellant contends that the question, in itself, was damaging and prejudicial to defendant's defense, and was calculated to have a harmful effect upon the jury, and that the sustaining of the objection thereto and instructing the jury to not consider the same did not destroy or remove the damaging effect of the question which it was intended by counsel it should have upon the jury. The question asked was very objectionable. Counsel must have known that it was an improper one, and it was doubtless intended to prejudice the jury against the witness. It is unnecessary for us to determine whether or not the asking of this question, of itself, constituted reversible error, since the case must be reversed upon another ground; but it is not improper to say that it may constitute reversible error and might necessitate a reversal of the case if there were no other error in the case.

The fifth and sixth assignments complain of improper argument by counsel for the plaintiff in addressing the jury. The argument was withdrawn and the jury instructed by the court to disregard the same. The same remarks made respecting the fourth assignment apply to the language complained of in the sixth assignment. The court charged the jury as follows:

"IV. You are instructed that railway companies are not to be regarded as insurers of the safety of their employés and that when one enters the employment of a railway company he assumes all the risks that are ordinarily incident to the business in which he is engaged, and all risks and dangers due to the negligence of the defendant or his fellow servants which are open and visible to his observation, as well as all the risks and dangers of which he knew, or in the ordinary discharge of his duties must necessarily have acquired the knowledge, *but he may assume that his fellow employés will exercise ordinary care in the discharge of their duties incident to their employment in which they are engaged.* * * *

"VI. Now, therefore, if you find and believe from the evidence and by a preponderance thereof, that on or about the 22d day of August, 1914, plaintiff was employed by the defendant at the time, place and in the capacity, as alleged, and that while so employed and engaged in the duties incident to his employment he met with an accident and was injured, as alleged by him, and you further find from a preponderance of the evidence that when the engine on which plaintiff was employed as fireman was stopped at Glorietta, N. M., the markers were not burning on the tender, and that when plaintiff discovered this fact, if it was a fact, he informed the engineer, if he did, and that thereafter he went to the rear of said tender for the purpose of relighting said markers and took a position on the rear end of said tender, and that while attempting to relight the markers, the engineer, without giving any notice or warning, moved or permitted the engine to move backward with a quick jerk or jar, if he did, and plaintiff, by reason thereof, was thrown or caused to fall from his then position, and his foot was caught by the wheels of the tender and injured to such an extent as to necessitate its amputation, and you further find that the engineer in charge of said engine was guilty of negligence, as that term has been heretofore defined and explained to you in causing or permitting said engine to move backward at the time and in the manner and way you find it was moved, if you find that the same was moved by the engineer, and you do not find that plaintiff assumed the risk, then, in that event, your verdict will be for plaintiff, but unless you do

so find you will return a verdict for the defendant. * * *

"VIII. You are instructed that if you find from the evidence that said engine was moved backward by said engineer suddenly and with a jerk, or moved without any notice or warning to plaintiff, *but that plaintiff knew that the engineer intended to move said engine backward in the manner and way in which the same was moved, or by the exercise of ordinary care on his part could have known of the same, and with such knowledge failed to protect himself, then in either of said events, you are instructed that plaintiff would assume the risk, and your verdict will be for the defendant."* Italics ours.

[5, 6] At the time of the accident, plaintiff was a fireman upon a helper engine which helped a train from Lamy, N. M., to Glorietta. When Glorietta was reached, the helper engine was disconnected from the train and the train proceeded. Plaintiff went to the rear of the tender to relight a marker upon the helper engine which had become extinguished. While so engaged, he claimed that the engine was suddenly moved by the engineer without warning to him, whereby he was thrown to the ground, the engine running over his leg and inflicting the injuries complained of. This was the ground of negligence submitted as a basis of the recovery. Appellant contends that the italicized portion of paragraph 4 of the court's charge was erroneous, and stated a positive misdirection of the law, in view of the evidence adduced that the movement of the engine at the time and place of the accident was made in the usual and customary way without any signal. In this connection, appellant invokes the rule announced in the Huyett Case, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669, and the Bonnet Case, 59 Tex. 73, 33 S. W. 334, viz.: That while the servant does not assume the risk of dangers brought about by the negligence of the master, yet this general rule is qualified and is not applicable where the servant has knowledge, when he enters upon the work in which he is hurt, of the negligence of his employer, and of the danger created thereby, to which he, the servant, is to be exposed in doing such work. It is true the evidence in this case shows, according to the defendant's viewpoint, that the engine was moved in the customary and usual manner when it was detached from the train which it was engaged in helping to Glorietta, and that plaintiff knew the customary and usual manner in which this was done; but this evidence all has reference to the usual and ordinary custom which obtained in detaching the helper engine from the helped train and returning to Lamy. There is no testimony showing or tending to show that it was usual and customary at the time and place of the accident for the engineer to move his engine without a warning signal to the fireman, if the fireman was or might be in a position of danger. Therefore the rule invoked has no application whatever to the state of facts here presented. But, if they have application, then the error in the court's charge in paragraph 4 is cured by the italicized portion of paragraph 8 of the general charge, and by appellant's special charge No. 2, which was given by the court and reads as follows:

"At the request of the defendant, you are instructed that if you find from the evidence in this cause that it was the practice and custom when using helper engines at Glorietta to disconnect the same from the train being helped and back away from the train being helped without giving any signal or notice to the fireman on said helper engine that said engine was going to be so moved, and that the plaintiff knew of such custom and practice, and you further find from the evidence in this cause that at the time the plaintiff was injured said engine was so moved in the usual and customary manner, and that same was known to plaintiff, and that while making such movements in the usual and customary manner, if you find that same was done, the plaintiff was then injured as alleged by him, that then plaintiff cannot recover, and your verdict should be for the defendant."

[7] The charge of the court is always to be considered as a whole; and, considered as a whole, and in connection with such special charge No. 2, it cured any error which might possibly have existed in that portion of paragraph 4 complained of.

[8] Objection is made to the sixth paragraph of the charge upon the ground that the court, having called the jury's attention to various features of the evidence and having undertaken to apply the law thereto, should have included as one of the elements of liability the question whether the engineer, as a man of ordinary prudence under all of the circumstances, ought to have known the position or probable position plaintiff was in at or about the time the engineer moved the engine, for unless the engineer, as a reasonably prudent man, should have known that plaintiff was or probably was in a position where he might be injured by the movement of the engine, he was not at fault when he moved the engine without a warning signal.

The paragraph of the charge mentioned is objectionable in the particular noted, for which reason the cause must be reversed and remanded. It is so ordered.

### On Rehearing.

In the original opinion, in passing upon the assignment complaining of the overruling of the plea of privilege to be sued in either of the counties of Potter, Hemphill, Galveston, Johnson, or Cooke, it was said that when appellant—

"saw fit to appear and except to the court's action in making such order, and obtained the 60-day order in which to prepare and file a statement of facts and bills of exception it may well be considered that it waived its privilege that the case be tried on its merits in some county other than El Paso."

This expression of opinion was not necessary to a decision of the question of venue, and it is perhaps not altogether in harmony with Railway Company v. Whitley, 77 Tex. 126, 13 S. W. 853, Railway Company v.

Childs, 40 S. W. 41, Railway Company v. Adams, 4 Willson, Civ. Cas. Ct. App. § 12, 14 S. W. 1015, and Callhan v. Pemberton, 38 S. W. 227.

We therefore withdraw the expression quoted, and base our action in holding that venue was properly laid in El Paso county upon the other ground indicated in the opinion, namely: That under the authority of Railway Company v. Buie, 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861, the defendant was doing business in El Paso county through the instrumentality of a Texas corporation, and had a line of railway in said county with offices and agents therein, as is fully set forth in the original opinion.

What is said in this opinion upon rehearing refers exclusively to the assignment which complains of the overruling of the plea of privilege. It does not relate to the jurisdictional question.

The motion for rehearing is overruled.