ATCHISON, T. & S. F. RY. CO. v. AYERS. (No. 657.)

(Court of Civil Appeals of Texas. El Paso. Feb. 1, 1917. Rehearing Denied Feb. 15, 1917.)

1. CORPORATIONS ⟜669—FOREIGN CORPORATIONS — ACTIONS — GENERAL APPEARANCE— SUBMISSION TO JURY.

Where a foreign corporation, after the suggestion as friends of the court of those who had been served as its agents that they were not such agents had been overruled, appeared to claim its privilege to be sued in another county, and thereafter answered to the merits, it submitted to the jurisdiction of the court and eliminated any question of the sufficiency of the service.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2641, 2642.]

2. COURTS ⟜97(6).— RULES OF DECISION— DECISIONS IN FEDERAL COURTS.

Though the question of whether service was had on a foreign corporation so as to give the state court jurisdiction over an action against it, is a federal question on which the decision of the United States Supreme Court is final; the question of the privilege of such corporation to be sued in a particular county is a state question on which the decisions of the state court are controlling, though contrary to those of the federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 333.]

3. RAILROADS ⟜33(2)—FOREIGN CORPORATION—VENUE OF ACTIONS.

A foreign railway corporation may be sued in a county in which it is doing business through the instrumentality of a domestic corporation which operates a line of railway connecting with the foreign corporation's line at the state boundary.

[Ed. Note.—For other cases, see Railroads, Cent.Dig. § 71; Corporations, Cent.Dig. § 2601.]

4. MASTER AND SERVANT ⟜297(3)—INJURIES TO SERVANT — EVIDENCE — ASSUMPTION OF RISK—VIOLATION OF RULE.

In an action for injuries to a car inspector while he was coupling the air hose between two cars on a train being made ready to go out when other cars were coupled to the string so as to move it upon plaintiff, special findings by the jury that plaintiff did not know of the risks, and could not by the exercise of ordinary care have known them, were not contrary to evidence which showed that the company had a printed rule requiring the inspector to place a blue flag at the end of the string on which he was working, where there was other evidence that the rule was not observed, and that the inspectors had verbal orders not to observe it when they were coupling the air hose on trains being made up for departure.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1197.]

5. MASTER AND SERVANT ⟜295(2)—INJURIES TO SERVANT — INSTRUCTIONS — ASSUMPTION OF RISK.

In connection with the special issues submitted in that action, a portion of the charge *held* not objectionable as misleading the jury into thinking that plaintiff did not assume the ordinary risks of his employment as well as those which he knew or should have known, or as an incorrect statement of the law applicable to the facts in the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1170.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by A. E. Ayers against the Atchison, Topeka & Santa Fé Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Turney & Burges, of El Paso, A. H. Culwell and Terry, Cavin & Mills, all of Galveston, for appellant. Geo. E. Wallace, P. E. Gardner, and W. S. Berkshire, all of El Paso, for appellee.

HIGGINS, J. Ayers filed this suit against appellant in the district court of El Paso county, Tex., to recover damages arising from personal injuries. He alleged that he resided in the state of Oklahoma, and that the defendant was a foreign corporation, duly incorporated, owning and operating a line of railroad extending from Barstow, Cal., through the states of California, Arizona, and New Mexico, to and into the city and county of El Paso in the state of Texas, where it maintained offices and agents who were engaged in carrying on the business of defendant in said El Paso county, pertaining to the operation of its line of railroad; that W. R. Brown was its general agent in said county, R. F. Goering its local agent, and J. S. Morrison is ticket agent; that each of said parties resided in El Paso county and maintained their offices there, and were engaged in selling tickets and making contracts for the transportation of goods and merchandise over defendant's different lines of railroad; that in addition to said named agents, the defendant had other agents who resided in said El Paso county, to wit, conductors of its trains that were run and operated into El Paso, Tex., and into Albuquerque and San Marcial, N. M.; that said conductors operated said trains from San Marcial and Albuquerque across the state line into El Paso county,

Tex. It was alleged that defendant also operated one of its lines of railway in Potter county, Tex., where it maintained an office and local agency, and where its general manager, F. C. Fox, resided and had his office.

Plaintiff further alleged that on April 15, 1915, he was in defendant's employment as a car inspector at Barstow, in the state of California, and upon that date, and at said place, while in the discharge of his duties he sustained personal injuries through defendant's negligence whereby he was damaged in the sum of $25,000, for which he sought judgment. Upon this petition, citations were issued and served in due form, upon R. F. Goering, J. S. Morrison, F. C. Fox, and a conductor named Bittrein, the same having been served in time to require answer to the November term, 1915.

At said term the parties upon whom the citations had been served appeared as friends of the court, and for its information filed affidavits denying that they were agents of defendant. The affidavit of Fox further denied that defendant owned or operated a line of railroad in Texas, and denied that it was doing business in Texas.

Upon hearing of issues raised by the amici curiæ, much evidence was offered, which it is unnecessary to state in detail. At said November term, on, to wit, December 18, 1915, the court entered an order that the affidavits of the amici curiæ—

"be overruled and held for naught, and that the defendant company be required to appear and answer herein, to which action of the court *the defendant* without waiving its right to insist upon said affidavits *then and there excepted.* It is further ordered by the court, for cause shown, that defendant be allowed sixty (60) days after the adjournment of this term of this court to prepare and file its statement of facts and bills of exceptions." Italics ours.

By bill of exception, it is also shown that when the affidavits of the amici curiæ were overruled—

"defendant then and there in open court excepted and tenders this its bill of exception, and says that the court in holding that it had no jurisdiction of this cause, as shown by the evidence and the affidavits of the amici curiæ, who were served as agents of defendants in this cause, and who appeared as friends of the court and filed their affidavits showing that at the time of the service the defendant herein was not doing business in El Paso county, had no agent in El Paso county, Tex., upon whom proper service could be made, and that said parties so served were not such agents, and that service upon them would not require defendant to answer herein, all of which has been shown by the evidence offered on said hearing, and the court erred in assuming jurisdiction over the defendant, and in ruling that the defendant should answer herein, to all of which rulings of the court, the defendant having at the time excepted, here now presents this its bill of exception, and prays that the same be allowed and made a part of the record herein."

On December 18, 1915, and after the court had overruled the suggestion of the amici curiæ, the defendant filed a plea of privilege claiming the right to be sued in either of the counties of Potter, Hemphill, Galveston, Johnson, or Cooke, admitting, for the purpose of that plea, that it was doing business in those counties, and that the district courts thereof had jurisdiction over its person, and that it could be sued therein.

On the date of its filing, the plea of privilege was overruled, to which action the defendant in open court excepted and was allowed 60 days after adjournment in which to prepare its statement of facts and bills of exception. The record does not contain the defendant's first original answer, and is silent as to the date upon which it was filed, but on April 6, 1916, it filed its first amended original answer to the merits. The case came on for trial at the March term, 1916, resulting in verdict and judgment for $9,000 in plaintiff's favor, rendered April 19, 1916, from which the defendant prosecutes this appeal.

[1] Appellant first challenges the jurisdiction of the courts of Texas. In the disposition of this question, it is assumed, under authority of the United States Supreme Court decisions, that the parties upon whom the citations were served were not agents of defendant; that defendant was not doing business in Texas, and therefore jurisdiction over the person of defendant was not acquired by service of that process. But under the authority of York v. State, 73 Tex. 651, 11 S. W. 869, Id., 137 U. S. 15, 11 Sup. Ct. 9, 34 L. Ed. 604, and Western Life Indemnity Co. v. Rupp, 235 U. S. 260, 35 Sup. Ct. 37, 59 L. Ed. 220, it is held that the defendant submitted its person to the jurisdiction of the Texas courts by its action in filing a plea of privilege and answer to the merits after the suggestion of the amici curiæ had been overruled. And it may be, aside from the filing of the plea of privilege and answer to the merits, that the defendant submitted itself to the jurisdiction of the court by its appearance and taking exception to the action of the court in overruling the suggestions made by the amici curiæ.

[2] The next ground of error presented relates to overruling the plea of privilege. This presents a question of venue and privilege. No jurisdiction or federal question is involved in its consideration. Railway Co. v. Whitley, 77 Tex. 126, 13 S. W. 853.

[3] Tested by the opinion rendered by Judge Brown in Buie v. Railway Co., 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861, which we follow as our guide in determining the question of venue, there is ample evidence in this record to sustain a finding by the trial court that the defendant was doing business in El Paso county through the instrumentality of the Rio Grande, El Paso & Santa Fé Railway Company, a Texas corporation having offices and agents in El Paso county, and which owns and operates and did own and operate upon all of the dates mentioned herein a line of railway from the city of El Paso in El Paso county northwardly to the Texas-New Mexico boundary line, where it connected with the railway line of defendant, and

that this Texas corporation was a mere mask and the instrument by which the defendant carried on its business in said El Paso county. As such, the defendant was really represented by the agents of the Texas corporation, and the venue was properly laid in El Paso county, where said agents were stationed.

Our views upon the question of jurisdiction as well as of venue or privilege are set forth at length in an opinion rendered by this court upon a former day of this term and not yet reported in the companion case of Atchison, Topeka & Santa Fé Railway Co. v. Stevens, 192 S. W. 304, to which we here refer. Upon those questions the essential facts in both cases are precisely the same. It will serve no purpose to restate our views at length, and we simply refer to the opinion rendered in the Stevens Case for the reasons upon which our action is based in overruling the appellant's contentions.

Plaintiff was a car inspector, and at the time of the accident was engaged in coupling the air hose on a string of 17 cars. These cars were a part of a train which was then being made up in the Barstow yards. He was in between two of the cars in a kneeling position and in the act of coupling the hose. While so engaged, another string of cars was switched against the string where plaintiff was working and the impact moved the two between which he was kneeling, knocking him down and inflicting severe personal injuries.

It is contended there is no actionable negligence upon the part of defendant shown by the evidence; further, that the evidence discloses the accident resulted from a danger, the risk of which was assumed by plaintiff, and also that the accident was due solely to plaintiff's own negligence. It is useles to detail the evidence. It amply and abundantly supports the findings favorable to plaintiff upon these issues. The court submitted these two issues:

"Question No. 8: Did the plaintiff, at the time he made or attempted to make the connection between the cars on which he was working, know of the risks and dangers of going between the cars as he did?

"Question No. 9: Could the plaintiff, by use of ordinary care incident to his employment, know of the risks and dangers of going between the cars as he did?"

Both questions were answered in the negative. In connection with these questions, this instruction was given:

"In connection with your answers to questions 8 and 9, you are instructed as follows: That the plaintiff on entering the employment of the defendant assumed all risks ordinarily incident to the business in which he was engaged, as well as such risks and dangers of which he knew, or in the ordinary discharge of his duties incident to his employment must necessarily have acquired the knowledge, *but you are further instructed that plaintiff did*

*not assume the risks and dangers, if any, due to the negligence of his coemployés, if any, unless he knew of such negligence and attendant risks, or in the ordinary discharge of his duties incident to his employment, must necessarily have acquired the knowledge."* Italics ours.

[4] It is asserted that the answers to these questions are contrary to the evidence because the plaintiff knew it was dangerous to go in between the cars without protecting the string from movement by placing a blue flag at each end thereof. This is predicated upon the fact that a printed rule of the company provided that when making repairs to, or inspecting and supplying, cars standing on the main or side tracks, inspectors must protect themselves by placing a blue signal on the drawhead, on the platform or step of the cars at each end of the train, to prevent the cars from being coupled to or moved while they are making repairs. But there is testimony to show that this rule was not observed, and that inspectors had verbal orders not to observe the same when they were coupling the air hose on cars in trains being made up for departure as the plaintiff was doing when he was injured. In response to other issues, the jury found that defendant was negligent in failing to notify or warn plaintiff of the approach of the cars which struck the string he was working on, and that it was also negligent to connect the two strings in such a way as to move the one where plaintiff was working. In the light of the instruction given for its guidance in answering the questions noted, and under the evidence adduced amply supporting the indicated findings of negligence, the jury's answers to questions 8 and 9 are not contrary to the evidence.

[5] The italicised portion of the instruction given in connection with questions 8 and 9 is objected to—

"because it put a limitation on the balance of the said special charge that might lead the jury to think that plaintiff did not, on entering the employment of the defendant, assume all risks ordinarily incident to the business in which he was engaged, as well as such risks and dangers of which he knew, or in the ordinary discharge of his duties incident to his employment must necessarily have acquired the knowledge; and that said special charge of the plaintiff should not have been given for the reason that it was not a correct expression of law applicable to the facts in this case, and was a misleading charge on the doctrine of assumed risks, as applicable to the facts in this case."

The charge is not subject to the criticisms urged against it.

It is also complained that the verdict of $9,000 is excessive. The verdict appears to be liberal in amount, but we are not prepared to say that it is so much so as to require a remittitur. Railway Co. v. Bartlett, 162 S. W. 1039.

Finding no error, the judgment is affirmed.